## J. H. CHUNN, Respondent, v. O'NEIL LUMBER COMPANY, Appellant.

### St. Louis Court of Appeals, June 24, 1913.

1. **LOGS AND LOGGING: Time of Delivery: Contracts.** A contract for the cutting and delivery of saw logs in a region usually flooded in the spring, which provides that the contractor shall "raft and float or otherwise deliver" the logs to the sawmill, requires him to deliver by other means, if the floods are not sufficient to permit delivery by rafting.

2. ————: **Contracts: Time of Performance.** Where a contract fixes no time for performance, a reasonable time is implied, and this rule applies to logging contracts the same as to others.

3. ————: **Time of Delivery: Contract Construed.** A contract provided for the cutting of saw logs, and for their delivery by "raft or otherwise," without specifying the time. Contrary to the usual experience, the spring floods were not sufficient to permit of delivery by rafting, and the logs, after being cut, were left lying on the ground, in which condition they would rapidly deteriorate. *Held*, that, in view of the fact that the logs would rapidly deteriorate if left lying on the ground, it is evident the parties intended that the delivery should be made within a reasonable time and by other means than rafting, if the floods were not sufficient to permit of delivery by that means, and the postponement of delivery for a year, awaiting the next spring floods, so as to enable the promisor to deliver by rafting, was unreasonable as a matter of law.

Appeal from Cape Girardeau Court of Common Pleas.—*Hon. Robert G. Ranney,* Judge.

REVERSED.

*Thos. F. Galt* and *Brown & Gallivan* for appellant.

*Brewer & Riley* for respondent.

NORTONI, J.—This is a suit for damages alleged to have accrued to plaintiff through the breach of a contract on the part of defendant. Plaintiff recovered and defendant prosecutes the appeal.

175 Mo. App. 41

The contract declared upon is in writing and pertains to the cutting and delivery of saw logs near defendant's mill. It appears defendant engaged plaintiff to cut and deliver 2,686,000 feet of saw timber. For felling trees and cutting the timber in proper lengths, it was agreed plaintiff should be paid seventy-five cents per 1000 feet. A further payment of $1.25 per 1000 feet was to be made for the delivery of the saw logs at the point designated in the contract. Both the timber and defendant's mill were located in the low country of southeast Missouri subject to overflow from the Mississippi river usually during the months of March and April. In view of this, the contract seems to contemplate the logs might be delivered through floating or rafting from the place whence they were cut in the lowland forest. The matter of floating and rafting logs is referred to three separate times in the contract, but it does not appear that this was the only method to be employed in making the delivery.

Plaintiff cut the 2,686,000 feet of logs and defendant paid him in full for the cutting at the contract price. It appears plaintiff finished cutting the timber some time in March, but the Mississippi river did not overflow the lowlands, and he was, therefore, unable to float or raft them as expected. Because of this, the logs lay upon the ground where they were cut, and defendant insisted upon plaintiff's delivering them. He declined to do so, however, for the reason that it was impossible to float or raft them. Plaintiff insisted that, as the contract fixed no time within which the delivery was to be made, he was not required to comply with the provisions touching delivery until an overflow prevailed during which he might float or raft the logs. It is said that the delivery could be made much cheaper by this means than otherwise and plaintiff therefore insisted that he had the right to wait another year to

float the logs during the high water which might then submerge the lands.

It appears such logs, after being cut, deteriorate in quality through lying upon the ground during the year, in that the sap of the timber becomes soft and wormy. Indeed, plaintiff in his testimony admits this to be true, and it is conceded that some of the logs involved here which had been cut in the early winter were then depreciating in value as saw timber. This being true, defendant, of course, insisted upon having the logs delivered and even offered to pay plaintiff extra for making the delivery by means otherwise than through floating, which, it is agreed, could probably not be done during that season. Notwithstanding this offer, plaintiff refused to make the delivery and defendant employed men with teams to do so. Having thus got the logs to its mill, defendant sawed them into lumber, and plaintiff instituted this suit against it as for a breach of the contract on the part of defendant through refusing to permit him to deliver the logs by means of a float.

The suit proceeds on the theory that defendant breached the contract through intermeddling and depriving plaintiff of the opportunity of floating the logs at the next overflow of the river and for the profits available to him in so making the delivery. A recovery was allowed as if the contract contemplated the delivery should be made solely by floating the logs and that defendant breached it by taking possession of the logs and removing them to the mill by means of teams and wagons after plaintiff declined to do so.

It is true that the contract declared upon expressly mentions the matter of rafting or floating the logs at some three different places therein; but it is entirely clear that this is not the only means of delivery contemplated between the parties. The fact that the mill and the timber were both situated in the over-

flow country, no doubt suggested the several references to making the delivery by floating the logs. It appears such course is quite usual thereabout. But be this as it may, the contract in express terms requires plaintiff to deliver the logs at the agreed price of $1.25 per thousand feet. The matter of felling the timber and cutting the logs into lengths is provided for, as above stated, at the agreed compensation of seventy-five cents per thousand feet. Defendant paid plaintiff in full for this.

Plaintiff is described in the contract as the party of the first part and the section thereof pertaining to the delivery of the logs reveals that duty to be enjoined upon him by raft, float "or otherwise" at the agreed price of $1.25 per thousand feet. The section of the contract referred to is as follows:

"It is also further agreed that the party of the first part shall raft and float, or otherwise deliver to the party of the second part, all the logs thus felled and cut, as above provided at, or immediately above, the bridge of the St. Louis Southwestern Railway, where it crosses a ditch at a point just off the northeast corner of section twenty-five, township twenty-four, range fourteen east, New Madrid county, Missouri, for which service the party of the second part agrees to pay the said party of the first part the sum of one and twenty-five hundredths (1 25/100) dollars for each thousand (1000) feet of logs so delivered. Such payments to be made on the fifth and twentieth days of each month, and to include all logs delivered within five days preceding those days."

No one can doubt that plaintiff agreed in this section of the contract to deliver the logs at $1.25 per thousand feet. It is true it authorized him to make the delivery by "raft and float" if such were possible, but the employment of the words "or otherwise" reveals, too, that the parties contemplated another means of

delivery as well. The mere fact that the words "raft and float" are employed touching this matter and that the contract does not fix a specified date within which the delivery should be made is immaterial when it is observed plaintiff agreed to deliver the logs "otherwise," for, though no time of performance is fixed by a contract, the law supplies the omission therein through an implication to the effect that a reasonable time was intended by the parties. [See Page, Contracts, vol. 2, sec. 1154.] Therefore, the obligation plaintiff assumed in the instant case was to deliver the logs to defendant within a reasonable time by float and raft, if possible; if not, then otherwise. The principle that a reasonable time is implied in all contracts if no time is expressly fixed therein obtains as well with respect to contracts for delivering logs or timber as to any other undertaking. [See Griffin v. Ogletree, 114 Ala. 343, 21 So. 488; Greenwood v. Davis, 106 Mich. 230, 64 N. W. 26; Bonifay v. Hassell, 100 Ala. 269, 14 So. 46; Gainor v. Boom Co., 86 Mich. 112, 48 N. W. 787; Day v. Gravel, 72 Minn. 159, 75 N. W. 1; Page, Contracts, sec. 1154.]

The case concedes—for all of the evidence, that of plaintiff and his witnesses as well as that of defendant, reveals it to be true—that the logs were deteriorating lying on the ground awaiting delivery. The character of the timber and the use contemplated repel the idea that the parties contemplated the logs should remain lying on the wet land another year awaiting an overflow to permit delivery through floating or rafting. The contract, of course, is to be interpreted by ascertaining the intention of the parties through consulting all of its provisions and considering the circumstances of which the parties were fully advised at the time it was made and touching the subject-matter. When so considered, it is entirely clear that it was not contemplated the logs should remain on the ground and de-

teriorate for a full year until another overflow should occur before delivery, as plaintiff insists. On the contrary it appears the parties intended the delivery should be made within a reasonable time, by means of rafting and floating, if plaintiff chose to do so and such were possible, but if not, then "otherwise." Plaintiff refused to make the delivery otherwise and it therefore appears that he, instead of defendant, breached the contract.

Though the finding and judgment are for plaintiff, the postponement of delivery for a year, or until the usual inundation of the following spring, may, in the circumstances of the case, be declared as a conclusion of law to be an unreasonable time for compliance. [Howe v. Huntington, 15 Me. 350.] Especially is this true in view of the character of the timber and the use for which it was cut when it appears as here to be admitted to be rapidly deteriorating.

The judgment should be reversed. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.