**Walter C. SMITH and Virginia Smith, his wife, Plaintiffs-Respondents,**

v.

**MORGAN DRIVE AWAY, INC., Defendant-Appellant.**

No. 41122.

Missouri Court of Appeals, Eastern District, Division Four.

March 10, 1981.

Roberts, Roberts & Rohrer, Clinton B. Roberts, Farmington, for defendant-appellant.

David L. Colson, James G. Freer, Farmington, for plaintiffs-respondents.

SMITH, Presiding Judge.

This case reaches the writer on reassignment. Defendant appeals from a judgment entered in a court-tried case awarding plaintiffs $7500 damages and denying defendant relief on its counterclaim.

In 1972, plaintiffs were the owners of a mobile home located in Florida. They desired to move the mobile home to Farmington, Missouri, and hired defendant for that purpose. Defendant is a common carrier regulated by the Interstate Commerce Commission. Plaintiffs had the mobile home moved to defendant's place of business in Sneads, Florida, for transport by defendant to Missouri. Plaintiffs were given a general estimate of the charges for the move, but were not provided with a bill of lading nor advised what method or time of payment was required. They also were not told when the mobile home would arrive in Farmington. Several days later Mrs. Smith received a call at her store in Farmington at closing time. The caller advised that he was the driver transporting the mobile home, that he was in the vicinity of Farmington and requested advice as to where to deliver the home. Mrs. Smith directed him to the proper location where she and the driver were met by Mr. Smith. The driver demanded payment of $825 in cash for the moving charge, refusing Mr. Smith's tender of a check. The driver also refused to wait until 9 o'clock the next morning for the payment as he wanted to leave immediately for Colorado to see his wife. All of this transpired at 6:00 p. m. At the same time plaintiffs discovered that the mobile home was damaged which the driver admitted happened when he "hit a bridge at Tupelo, Mississippi." Following his refusal to accept the check or wait until the next morning, and after Smith's advice that he did not have $825 in cash available at that time of day, the driver left with the mobile home. Unknown to plaintiffs, he stored it on an automobile dealer's lot in Flat River at an agreed charge of $2.00 per day and left the area. Plaintiffs found out about the storage location several days later from the Florida office of the defendant following their telephone call to defendant. The mobile home was never delivered to plaintiffs and no one, including the driver, had the keys or knew where they were, although the Smiths had turned them over to defendant in Florida. The keys had not been located at trial time.

Defendant's first point is that the trial court erred in its findings that plaintiffs

"had made a prima facie case of bailment for which the trial court set forth facts to support its finding and, thereafter, awarding respondents damages based upon a theory of negligence for which the trial court made no findings of fact . . . ."

 This point confuses the relationship between the parties (bailment) with the theory of recovery arising from that relationship (negligence). Having established the bailment relationship and the failure of defendant to return the property in undamaged condition plaintiffs had established their case and could recover for either breach of the bailment contract or negligence. *Ryan v. Park-Rite Corp.*, 573 S.W.2d 450 (Mo.App.1978). Defendant offered no evidence to defeat the inference of negligence, as was its burden, and it was not incumbent upon the trial court to make a finding of negligence. That ultimate fact was inferred from plaintiffs' proof of the bailment and the failure to return the property undamaged. *Broadview Leasing Co. v. Cape Central Airways, Inc.*, 539 S.W.2d 553 (Mo.App.1976) [1]. *Resolute Insurance Co. v. Morgan Drive-Away Inc.*, 403 S.W.2d 913 (Mo.App.1966) [6–8]. Plaintiffs alleged both negligence and breach of the bailment contract, and their evidence established facts which would have permitted recovery under either theory. We find no merit to defendant's first point.

 Defendant next contends that the court erred in failing to find that the Interstate Commerce Act and the bill of lading, which allegedly comports with defendant's tariff, bars recovery because both require payment for transportation charges prior to respondent's being able to assert a claim. There are several reasons why this position is without merit.

Initially, the bill of lading (along with all other exhibits) has not been filed with this court so we have nothing before us other than testimony stating the effect of that document. Secondly, delivery of the mobile home was never reasonably tendered to plaintiffs, (*see infra*) and we have been cited to no cases which hold that the Interstate Commerce Act requires payment for services never rendered. Finally, if tender of the charges was required as a condition of delivery, and the failure to tender at that time is the basis of defendant's contention, the failure of tender was due to defendant's actions making such tender impossible or at least highly impractical.

"The general rule is that conduct by a party to a contract which increases the risk that a condition precedent thereto will not be satisfied, and which is beyond the reasonable expectations of the other party, is wrongful and excuses the condition." *In the Matter of the Estate of Parker*, 536 S.W.2d 25 (Mo.banc 1976) [5]. *See also, Hillis v. Blankhard*, 433 S.W.2d 276 (Mo.banc 1968) [3, 4]; *Artcraft Cabinet Inc. v. Watajo, Inc.*, 540 S.W.2d 918 (Mo.App.1976); *Cable v. Wilkins*, 352 S.W.2d 50 (Mo.App.1961) [6]; *Reid v. Kelly*, 300 S.W.2d 542 (Mo.App.1957) [1, 2].

Plaintiffs did not receive information from defendant as to the exact amount of the charges for transporting the mobile home until the home arrived in the Farmington area. They received no bill of lading in Florida and were not advised until the home arrived that payment in cash was required at the time of delivery. They were not advised prior to delivery when delivery could be expected either as to date or time. This made it impossible to arrange in advance for two of the possible three alternative payment methods testified to by defendant's district manager—certified check or cashier's check. Plaintiffs first became aware of the requirement of cash and the amount of the charges at 6:00 p. m., after normal business and banking hours. The driver refused a check tendered by plaintiffs,[1] refused plaintiffs offer to obtain an oral guarantee from either of the town's two bankers, and refused to wait until the

---

1. We find no support for defendant's contention that Sec. 317(a), 49 U.S.C.A. requires payment in cash. That section provides that tariffs be stated in "lawful money of the United States," meaning that tariffs cannot be stated in francs, yen, or oranges. It does not prescribe a method of payment.

commencement of banking hours the next morning to receive the money and make delivery. Because of his desires to return to his home in Colorado immediately the driver refused to give plaintiffs a reasonable opportunity to satisfy the condition of payment brought first to plaintiffs' attention at the time of delivery. We do not regard it as reasonable to require plaintiffs to carry a large but undetermined amount of cash for an undetermined length of time to satisfy an obligation unknown in amount accruing during non-business hours. Defendant's conduct hindered, and in fact prevented, plaintiffs compliance with the condition precedent and was beyond the reasonable expectations of the plaintiffs. No subsequent offer of delivery appears in the record. The condition was excused. There is some limit to the extent that a carrier may insulate itself from responsibility by reliance upon the Interstate Commerce Act. That limit was passed here.

■ Defendant next contends that the award of damages was unsupported by the evidence. We are constrained to agree. There was evidence of the purchase price of the mobile home ($4145), that it was almost new, that at trial time it had increased in value if in an undamaged state, and that its value as damaged was $1000. The court erroneously found that the plaintiffs paid $4961.97 for the mobile home and made no finding of its value before the damage. In addition, the trial court found accrued storage charges of $3236 and entered a judgment for $7500.[2] In the present posture of the case the mobile home is still under the constructive possession of defendant and the judgment does not change that status. The obligation to satisfy the storage charges is a contractual undertaking of defendant's, for its benefit, and we find no basis for awarding damages to plaintiffs for that item.

■ Plaintiffs did introduce evidence of the rental value of the mobile home. Loss of use of a vehicle is an item of general damage. *Weller v. Hayes Truck Line*, 355 Mo. 695, 197 S.W.2d 657 (banc 1947) [13–15].

For the reasons stated in that case we believe the same rule should apply to this mobile home. Plaintiffs therefore are entitled to recover for the loss of use of the mobile home.

■ The plaintiffs' damages for the defendant's conduct is difficult to ascertain in the present posture of the case. Plaintiffs sought damages in two counts—the first premised on a return in damaged condition, the second on no return at all. No election of which count plaintiffs were proceeding on was made. The plaintiffs measure of damages on Count I would be the difference between the reasonable value of the home at the time it was delivered to defendant undamaged and the reasonable value at the time it is returned (presumably in damaged condition) plus the loss of use of the home in the interim. Under Count II the measure of damages is the reasonable value of the home at the time of delivery to defendant plus the loss of use for such period as the trial court finds to have been a reasonable period for the plaintiffs to wait for delivery before replacing the home. *Crawford v. Smith*, 470 S.W.2d 529 (Mo. banc 1971). Leave should be freely given to plaintiffs to elect the theory of damages they will seek to establish.

■ Defendant's final point is that it was entitled to judgment on its counterclaim for the transportation charges. Defendant has never performed its contract and cannot now do so seasonably, and is not entitled to payment for services never rendered or in breach of its contract. *Chunn v. O'Neil Lumber Co.*, 175 Mo.App. 641, 158 S.W. 94 (1913).

Judgment is reversed and the cause remanded only for retrial on the issue of damages.

SATZ, J., and STOCKARD, Special Judge, concur.

**2.** This total exceeds the total of the found reduction in value and storage charges.