ELIZABETH KLING, Respondent, v. A. H. GREEF REALTY COMPANY, Appellant.

Kansas City Court of Appeals, June 3, 1912.

1. **CONTRACTS: Breach: Recovery of Deposit.** Plaintiff sued to recover the amount deposited with a real estate agency as a partial payment of the purchase price of certain real estate under a written contract. The vendor acquired the land as the devisee of a citizen of New Hampshire who died intestate. No administration of his estate in this state was procured, and the land in question was therefore subject to the lien of debts of the testator not barred by the administration in New Hampshire. *Held,* that the doubt cast on the title by the fact that debts may be outstanding which may be enforced against the land is a substantial doubt that renders the title unmarketable and justified the rescission of the contract.

2. **MARKETABLE TITLE: Real Estate.** A marketable title is one which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would in the exercise of that prudence which business men ordinarily bring to bear upon such transactions be willing to accept.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

AFFIRMED.

*F. M. Hayward* and *C. S. McLane* for appellant.

*W. T. Latham* for respondent.

JOHNSON, J.—This suit commenced in the circuit court of Jackson county, November 25, 1910, is for the recovery of two hundred dollars plaintiff deposited with defendant as a partial payment of the purchase price of certain real estate in Jackson county she purchased of William R. Dickey for whom defendant acted as agent in the sale of the land. It is alleged that Dickey failed to perform the contract of sale which

required him to deliver an abstract of title to plaintiff showing that he had a good title and to convey said title to plaintiff "free and clear from all liens and encumbrances whatsoever," and that on plaintiff's election to rescind the contract defendant refused compliance with her demand for the return of the deposit. The answer put in issue the allegation of a breach of the contract of sale. A jury was waived and after hearing the evidence the court rendered judgment for plaintiff in accordance with the prayer of her petition. Defendant appealed.

The facts of the case thus may be stated. On February 24, 1910, plaintiff and William R. Dickey entered into a written contract by the terms of which Dickey sold certain lots in Kansas City to plaintiff for the sum of thirty-six hundred dollars, payable as follows: "Two hundred dollars at the signing of this contract, the receipt whereof is hereby acknowledged by the seller and which is deposited with A. H. Greef Realty Co., as part of the consideration of the sale, the balance whereof is to be paid . . . on delivery of the deed as herein provided." The contract provided that within ten days from its date the vendor should deliver to the vendee "a complete abstract of title to said property from the United States Government to this date with certificates by competent abstracters as to taxes, judgments and mechanics' liens affecting said property. This buyer shall have ten days after such delivery of abstract to examine the same.

"If the title be good, the seller shall deliver for the buyer at the office of said A. H. Greef Realty Co., warranty deed, properly executed and conveying said property free and clear from all liens and encumbrances whatsoever, except as herein provided; the buyer shall then and there pay the balance, if any, of said cash payment, and deliver to the seller the note and deed of trust, if any, hereinbefore provided for,

and furnish the seller with insurance policy containing loss clause payable to the seller as his interest may appear; the buyer to accept assignment of insurance now in force, paying therefor unearned value prorated at present current rates.

"If the title is defective, the buyer shall specify the objections in writing to be delivered to the seller or the office of A. H. Greef Realty Co., within ten days after such delivery of the abstract; the seller shall have the defects rectified within thirty days from date of delivery of such objections, but in case such defects in the title cannot be rectified within that time, this contract shall be null and void, and the money deposited as aforesaid shall be returned to the buyer and the abstract returned to the seller."

The deposit of two hundred dollars was made by plaintiff with defendant as required, an abstract of title was delivered to her and she handed it to her lawyer for examination. It appears that the vendor acquired the land as the devisee of Robert C. Dickey, a citizen of New Hampshire who died testate in that state in October, 1908. The abstract did not show an administration of his estate either in New Hampshire or in this state. In his letter on the title the attorney of plaintiff said: "From information which we have received outside of the abstract, it seems that Robert C. Dickey died some time ago in New Hampshire, leaving a will in which he devised his property, including property covered hereby, to a son; and that administration on the estate of Robert C. Dickey has been running in New Hampshire. This being true, a copy of the will, properly probated, should be duly recorded in this county, and a satisfactory showing made that all the debts of Robert C. Dickey have been paid. We are at a loss to know how this showing can be made as it has been stated to us that no administration has taken place in this county. However, we

shall deal with this question when a completed abstract of title is presented to us.''

The abstract and letter were delivered to defendant and after the vendor had procured affidavits from New Hampshire relating to the subject of the administration of the estate of Robert C. Dickey, defendant returned the abstract with the affidavits to the attorney of plaintiff who, under date of April 16, 1910, wrote her the following letter:

''Since giving you our opinion, dated March 31, 1910, on the title to the north 12.5 feet of lot twelve (12) and the south 18¾ feet of lot thirteen (13), all in block four (4) of Chase's subdivision in Kansas City, Missouri, as shown by the abstract of title, certified by Norman and Robertson Abstract Company, on March 22, 1910, the abstract of title has been recertified to April 13, 1910, under certificate number 19562 by the same abstract company, and, with the affidavits of George A. Dickey, L. B. Bailey and F. A. Dickey, has been handed to us for our re-examination as to the title.

''William R. Dickey, who has contracted to sell the property to you, claims title as devisee under the will and as heir of Robert C. Dickey, who appears to have died in New Hampshire in or about the month of October, 1908. In our estimation, the title of William R. Dickey is unmerchantable for the reason that there has been no local administration on the estate of Robert C. Dickey, deceased, and hence any debts that he may owe locally are enforceable against the property.

''For the reason that the title is unmerchantable, you should demand from A. H. Greef Realty Company the sum of two hundred dollars, which you deposited with them at the time of the signing of the contract, and which under the contract was to be returned to you in case the title was not good.''

No formal evidence of an administration of the estate in New Hampshire was procured but from one of the affidavits—that of the executor—it appears the will was probated, that there was an administration, that all of the debts proved against the estate had been paid and that the time for presenting demands had expired. No attempt was made by the vendor to furnish proof to plaintiff that Dickey, at the time of his death, owed no debts in Missouri or in other states than New Hampshire. Plaintiff's attorney testified:

"I recall that the investigation I made developed no debts, but it did not satisfy me that there could be none."

So far as the record discloses the lots which were the subject of the sale comprised the whole estate left by the decedent in this state.

First it is contended by counsel for defendant that in cases of this character "the purchaser has the burden of showing that the title is not such as is called for by the contract. It is not the duty of the vendor to show that the title is good." [Citing 29 Am. & Eng. Ency. Law, p. 620; Sawyer v. Sledge, 55 Ga. 152; Kimball v. Bell, 47 Kan. 757; Spring v. Sanford, 7 Paige (N. Y.), 550; Moser v. Cochrane, 107 N. Y. 35.]

That rule has application to cases where the only obligation imposed on the vendor by the contract is to execute and deliver a deed to the vendee conveying a good title and the deed is refused on the ground that the title is defective. In an action to recover purchase money paid in advance of the proffered delivery of the deed the vendee must show that the title was bad but where, as in the present instance, one of the duties imposed by the contract on the vendor is to deliver to the vendee in a stated time an abstract of title showing a good title in him, the vendee may rescind the sale on the ground of a breach of such condition and his burden of proof in an action to recover purchase money paid in advance may be discharged by

proof that the abstract furnished him by the vendor did not show a good title. [Austin v. Shipman, 141 S. W. Rep. 425, and cases cited.]

The question at issue here is whether or not the vendor did furnish the vendee an abstract of title showing a good title to the land vested in him. If he did, plaintiff was not justified in rescinding the contract and has no cause of action for the recovery of the deposit; if he did not, plaintiff acted within her rights in the rescission and is entitled to a return of the deposit.

The term "a good title" is synonomous with "a good marketable title" and the following definition of what constitutes a marketable title has received the approval of our Supreme Court in Mastin v. Grimes, 88 Mo. 478; Mitchener v. Holmes, 117 Mo. l. c. 205, and Green v. Ditsch, 143 Mo. 1.

"Every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying, if not successful suits, be brought against him and probably take from him or his representatives land upon which money was invested. He should have a title which would enable him not only to hold his land, but to hold it in peace and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value."

There is no implied covenant that the title will be such as the vendee may be willing to accept or that his attorney may pronounce good and marketable. [Green v. Ditsch, supra.]   And a mere suspicion against the title, or a speculative possibility that a defect in it might appear in the future, are not grounds on which the title may be denounced as unmarketable. As is said in one of the cases: "A purchaser is not entitled to demand a title absolutely free from all suspicion or possible defect. He may claim a marketable title, and that means a title which a reasonable purchaser, well informed as to the facts and their legal

bearings, willing and anxious to perform his contract, would in the exercise of that prudence which business men ordinarily bring to bear upon such transactions be willing to accept and ought to accept.'' [Todd v. Savings Institution, 128 N. Y. 636; Moser v. Cochrane, 107 N. Y. 35; Hayes, Guardian v. Cemetery, 108 Mass. 400.] A reasonable doubt of a title, such a doubt as will render it unmarketable in the contemplation of the law, does not embrace mere shadows or possibilities, but probabilities. Moral, not mathematical, certainty that the title is good is all that may be demanded by the vendee. [Atkinson v. Taylor, 34 Mo. App. 442.]

Was the defect of a nature that would have prevented an ordinarily careful and prudent person in the situation of the vendee from consummating the sale though he was willing and anxious to take the property under the terms of the contract, is the real test question in all such cases. No reasonable person wishes to pay full value for property and have cause to feel uncertain about his title and the mere fact that no adverse claimant is at hand would not make his fear speculative or unsubstantial, if there is a reasonable likelihood that an unknown claimant may appear in the future and succeed in establishing a better right to the property. A vendee who buys a good title is entitled to receive what he buys and should not be compelled to assume risks of defects that cannot be classed as being common to all good titles. Certainly the existence of a reasonable probability that debts are outstanding, for the payment of which the land lawfully may be appropriated, is a defect that would cast a serious doubt on the title in the minds of reasonably careful and prudent persons who desired to purchase. In the present instance the fear of plaintiff, inspired by her attorney whose good faith is apparent, that the land might be assailed by creditors of the estate of Robert C. Dickey as one

which the facts disclosed in the abstract of title in no manner tended to allay.

It is true evidence was procured by defendant and attached to the abstract to the effect that an administration of the estate was in progress in New Hampshire, that the time for proving demands had expired and that all debts proved against the estate had been paid, but no proof was furnished that the decedent who owned property in this state did not owe debts in this State or debts in other states than New Hampshire. If he did, such creditors would not be precluded by the New Hampshire administration from proceeding in this state to appropriate the land in question for the payment of their debts. Every lawyer of experience in the practice of law relating to real property knows of instances of the delayed and unexpected enforcement in this state of demands against the estates of debtors who were non-residents of this state but who died owning property here. Indeed, section 188, Revised Statutes 1909, was designed, in part, to apply to just such cases and may be considered as a legislative recognition of their frequency. The doubt cast on the title by the facts that debts may be outstanding against the estate and that because of the omission of an administration of the estate in Missouri such debts may be enforced against the land, is a substantial doubt that renders the title unmarketable and justified plaintiff in rescinding the contract.

The judgment is affirmed. All concur.