## CLAUD D. BUNYARD, Respondent, v. B. H. FARMAN, Appellant.

**Springfield Court of Appeals, December 11, 1913.**

1. **REAL ESTATE BROKERS: Commission: Action for: Evidence Reviewed.** In an action by a real estate broker to recover commission, evidence examined and reviewed. *Held*, to make a question for the jury whether or not the prospective purchaser whom the broker procured was "ready, willing and able to buy."

2. **————: Purchaser "Ready, Willing, Able to Buy:" Meaning.** A purchaser ready, willing and able to buy means that he must be ready, willing and able to buy within a reasonable time, where no specific time is fixed in the contract of sale.

3. **————: Preparation of Title: Reasonable Time for.** After the broker has produced a purchaser, the vendor is entitled to a reasonable time in which to make a deed, prepare an abstract and correct curable defects therein which the purchaser has pointed out, no specific time being fixed in the contract of sale.

4. **————: Commissions: Not Entitled to, When.** Where purchaser refuses to allow vendor a reasonable time to make a deed, prepare an abstract and correct curable defects therein, the broker procuring such purchaser is not entitled to commission.

5. **————: Vendor's Right to Reasonable Time, What is.** The facts in each particular case determine what is a reasonable time for a vendor's preparation to convey a merchantable title.

6. **INSTRUCTIONS: Broker's Commission: Reasonable Time to be Given Vendor.** In an action by a broker to recover commission, the court instructed that the broker should recover if he had procured a purchaser ready, willing and able to buy

Bunyard v. Farman.

and if the sale was prevented because the vendor did not or could not furnish an abstract showing merchantable title to the land. *Held*, erroneous in that it denied the vendor a reasonable time within which to perform.

7. **EVIDENCE: Real Estate Brokers: Commissions.** Where a purchaser procured by a broker refused to purchase because of defects in title which were curable, *held* proper to admit a decree of court which corrected an erroneous description in vendor's deed for the purpose of showing .that the vendor could have remedied such defect, although such decree had not been recorded, was not shown by the abstract, or known to the broker.

Appeal from Dent County Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED.

*Lamar, Lamar & Lamar* and *John M. Stephens* for appellant.

(1)   Before the broker negotiating the sale can put the vendor in the wrong and claim commission on the ground of vendor's default in conveyance, he must show that his alleged purchaser had the ability; that is, the cash, ready to pay when he demands conveyance. 19 Cyc. 246, note 93.   Hayden v. Grill, 26 Mo. 289; Harmon v. Enright, 107 Mo. App. 560; Butler v. Baker, 33 Am. St. Rep. (R. I.) 897.   (2)   The vendor was entitled, after notice that a purchaser had been found, to a reasonable time in which to prepare deed and abstract. Lumaghi v. Abt, 126 Mo. App. 221; State ex rel. v. Broaddis, 238 Mo. 212; Otto v. Young, 277 Mo. 202; Mastin v. Grimes, 88 Mo. 487; Gerhardt v. Peck, 42 Mo. App. 652-653; Davis v. Real Estate Co., 145 Mo. App. 24; 39 Cyc. 1326 J 2, note 43.   39 Cyc. 1332-5. (3)   Forfeitures are not favored.   Time will not be regarded as of the essence of the contract unless it is expressly made so by the .parties and so written in the contract.   Parsons on Contracts (8 Ed.), pages 338-

384; 39 Cyc. 1337-1338-1339-1340; Heating and Vent. Co. v. Bissel, 41 Mo. App. 430. (4) The contract herein fixing no time for the execution and delivery of the deed, and a reasonable time after notice to defendant that a purchaser had been found was implied. 2 Page on Contracts, sec. 1154; Chun v. Lumber Co., 175 Mo. App. ——, 158 S. W. 94, and cases cited. (5) The decree of the circuit court of Dent county offered in evidence by defendant should have been admitted in evidence.

*J. D. Gustin* and *Wm. P. Elmer* for respondent.

(1) It was the duty of the respondent to secure a purchaser ready, able and willing to purchase at the price and on the terms required by the employment. And when he had done this, he had performed his whole duty under the contract. Carpenter v. Rynders, 52 Mo. 278; Nesbit v. Hessler, 49 Mo. 384; Gerhart v. Peck, 42 Mo. App. 651; Watkins v. Thomas, 141 Mo. App. 263; Herrick v. Maness, 142 Mo. App. 399; Herrick v. Woodson, 143 Mo. App. 258. (2) The question of whether the plaintiff had so complied with his contract was one of fact for the jury, whose determination of it under proper instructions is final. Herrick v. Woodson, supra; Cornet v. Cabrillac, 228 Mo. 212. (3) After the broker had devoted his time and labor in a transaction to which he was moved by the appellants employing him, he could not be defeated because the appellants found themselves unable to perform. This was a matter they should have taken into account before employing a broker, not after. Brown v. Smith, 113 Mo. App. 59; Cook v. Piatt, 126 Mo. App. 553. (4) The law is well settled that when the owner of land employs a real estate agent to negotiate a sale only, it is always implied that the owner has a good title to the land. Gerhart v. Peck, 42 Mo. App. 651. (5) The decree of court was properly excluded from the evidence.

FARRINGTON, J.—This is a suit by a real estate broker to recover commission. Upon trial by jury, plaintiff recovered a judgment for $800, and the appeal is brought by the defendant.

Bunyard, the respondent, a real estate broker, entered into a contract with the appellant dated February 1, 1911, by the terms of which respondent paid appellant $300 for the exclusive right to sell within one year from the date of the contract certain land belonging to the appellant (320 acres) which, according to the contract, respondent could sell and retain for his commission all over the sum of $8000, and it was agreed that a purchaser might pay one-half the purchase price in cash and the remainder within five years at six per cent interest. The contract also contained this provision: "It is further agreed that first party is to furnish a good and sufficient warranty deed conveying said land which may be sold unto the purchaser thereof, together with an abstract showing merchantable title to said land." The land in question is some six or eight miles from Salem, in Dent county, Missouri.

Respondent claims to have procured a purchaser in the person of one George T. Walters on January 31, 1912, which was the last day the contract had to run. This alleged purchaser reached Salem on a train at 3:55 p. m., January 31, 1912, and in company with the respondent drove in a buggy to the land in question. Not finding appellant on the place, they drove to a neighbor's house where appellant was to stay over night, his family being in the town of Salem, and during the conversation which followed, ten dollars was paid to appellant, and it was agreed that appellant would go to Salem the next morning and the contract of purchase would be consummated. It was agreed by the parties that the price to be paid for the land was $8800, which would give respondent, the agent, $800 as his commission. There is some conflict in the evidence as to whether the purchase price was to be paid

in cash, or part cash and time given for the balance, but this is immaterial to the decision of the case.

The next day, which was February 1, 1912, appellant went to Salem, and in company with respondent and Walters went to the office of an attorney (G. C. Dalton) in whose keeping the abstract of title had been left by the appellant. It developed at the trial that appellant, prior to the transaction in question, had made an application for a loan to a loan company which had objected to the title as shown by the abstract in two particulars. The objections to the record title arose out of the following facts about which there is no dispute: The land at one time belonged to Mary S. Clark, who died owning the land, and by her last will and testament, which was probated in Phelps county, Missouri, made one of her children, Lilly E. Clark executrix, and by the terms of said will gave to the said Lilly E. Clark the right to sell and dispose of the land whenever in her discretion the sale would be for the benefit of the estate, and further provided that the said Lilly E. Clark was to take possession of said land and manage it until in her discretion it should be sold. By another clause in the will it was provided that ''Lilly E. Clark should then sell and convey said land, after obtaining the consent of her brothers, William E. Clark and George W. Clark, and her sister, M. Della Gay, and of the husband of said sister, Frank M. Gay.'' In August, 1906, Lilly E. Clark did sell the land to B. H. Farman, which deed was recorded in Dent county. The heirs, as a matter of fact, had all filed a petition in the probate court of Phelps county requesting the sale of this land as provided in the will, which written request was on file in the office of the probate court of Phelps county, but a certified copy of which was not attached to the abstract. However, quitclaim deeds had been secured from all the heirs of Mary S. Clark, except one. After the deed had been executed by Lilly E. Clark, the executrix, it was discovered that by mis-

take of the scrivener the land had been misdescribed in the deed, and a suit was brought, returnable to the November, 1910, term of the circuit court of Dent county against the heirs of Mary S. Clark to correct the defect in the numbers of the land, and a decree was duly rendered at said term reciting in full all the facts concerning the execution of this deed of the executrix and reciting the consent of all the heirs to its execution, and finding that said deed conveyed the identical land in controversy herein and other land. That was some fifteen months prior to the transaction with which we are concerned. The abstract exhibited to Walters showed quitclaim deeds from all the heirs except William E. Clark. After *February* 1, 1912, upon inquiry, it was discovered that in 1906 all these heirs had filed the petition in writing in the probate court of Phelps county asking that the land be sold. The other objection related to a deed of trust which William E. Clark had given at one time to one Diehl, of Phelps county, which had been paid off by Lilly E. Clark, the executrix, the record of which was yet unsatisfied.

Plaintiff's testimony is to the effect that Walters was ready, willing and able to purchase the land, and was willing to allow a reasonable time to appellant to show good title. Defendant's testimony is to the effect that on learning of the two defects, Walters, the proposed purchaser, on February 1, 1912, the day the parties met in Salem to consummate the deal, refused to go on with the trade and "would make it under no circumstances." Much of the record is taken up in an attempt to show bad faith on the part of the respondent and Walters, that Walters was merely a "straw purchaser," and that it was a scheme to hold appellant for the commission. However, the evidence on this question was conflicting, and the fact whether Walters was a bona-fide purchaser, ready and able to buy the land, was determined by the jury.

The first point raised by appellant—that his peremptory instruction should have been given—must be ruled against him for the reason that Walters testified he was ready, willing and able to buy the land on February 1, 1912, or within a reasonable time thereafter, and that at any time within thirty days from that date, he was ready, willing and able to buy and would have bought the land had appellant been ready, willing and able to give a merchantable title, and an abstract showing the same. While there is evidence tending to show that Walters had only a small portion of the purchase price with him, this would not be conclusive proof that he was not ready, willing and able to purchase, because to hold otherwise would be to say that Walters must have had at least $4400 with him at the time in order to meet the requirements of "a bona-fide purchaser." His showing of ability to raise the necessary fund within a reasonable time was sufficient to sustain the verdict, the effect of which was that he was able to pay. As to being *willing,* his testimony that he wanted the place for the price named and paid ten dollars, that he went to the farm and found the owner and by agreement met him the next morning for the purpose of consummating the deal, and, in a way, examined the abstract, is sufficient to take the question of his willingness to purchase to the jury. It is true, defendant testified that the alleged purchaser when shown the defects in the abstract refused to go further with the trade and refused to give defendant any time within which to make the title merchantable, if it was not already so, and "said he didn't want it at all; said he wasn't tying up no money." Defendant also testified that he then said to Walters: "We will give you—you put up your money and I will put up a warranty deed and give you possession and not only that, I will guarantee you a merchantable title within thirty days, and he wouldn't accept it under no circumstances." Thus was established a conflict in the evidence, on the one

side that the purchaser produced was ready, willing and able to purchase on February 1, 1912, or within thirty days from that time provided a merchantable title was offered and that none was offered, and on the other, that when certain defects in the record title were pointed out, the alleged purchaser refused to proceed with the deal and would consummate the purchase under no circumstances although appellant was offering to make a warranty deed and guarantee a merchantable title within thirty days. Such conflict existing, no authorities are necessary to support the proposition that the issue was righfully put to the jury.

The contract between appellant and respondent required that respondent within one year procure and produce a purchaser ready, willing and able to buy— that is to say, time was of the essence of their contract; it fixed the period within which there must be produced such a purchaser as is defined by law. But nowhere in the contract is there any provision requiring the vendor to have his deed ready and his abstract prepared showing a merchantable title, or requiring him to deliver a merchantable title on any fixed date. If appellant as a witness is to be believed, because his abstract failed in two particulars to show a merchantable title, the alleged purchaser refused to proceed with the deal, denying appellant a reasonable time within which to correct such defects. Where no specific time is fixed in the contract of sale, both parties have a reasonable time within which to prepare for the final delivery of title and payment of the purchase price. The rule that a purchaser produced by the broker must be ready, willing and able, means that he must be ready, willing and able to carry out the purchase *within a reasonable time;* and this rule applies with equal force to the vendor, both as to his duty to his agent and to the purchaser. The vendor must, in the absence of any agreement fixing the time, be ready, willing and able to convey the title contracted for—i. e., make a deed, prepare

an abstract and correct any curable defects therein pointed out by the purchaser—within a reasonable time, what would be a reasonable time depending on the facts of each case. [Mastin v. Grimes, 88 Mo. 478; 39 Cyc. 1326-1333.]

In the case of Lumaghi v. Abt, 126 Mo. App. 221, 103 S. W. 104, the court in discussing this question used the following language (l. c. 232) : "Time was of the essence of the option agreement to the extent of requiring Abt to give notice by December 17th of his election to take the land. . . . Whether it was of the essence of the contract so as to make it obligatory on Lumaghi to convey on that very day, depends on the terms of the instrument and the circumstances of the case." Again (l. c. 233) : "In transactions like this, the owner of the land need not prepare a deed for delivery until he is notified by the holder of the option that he intends to conclude the purchase. [Smith & Flack's Appeal, 69 Pa. St. 481.] Where one party is required by the terms of a contract to do an act on demand, or on the performance of some act by the other party, the former is allowed a reasonable time for performance after the contingency happens. [29 Am. and Eng. Ency. Law (2 Ed.), 69; Mason v. Payne, 47 Mo. 517; Wells v. Smith, 2 Ed. Ch. (N. Y.) 78; McNamara v. Pengilly, 58 Minn. 353; Dunbar v. Stickler, 45 Ia. 385; Gregory v. Christian, 42 Minn. 397; Russell v. Copeland, 30 Maine 322.]"

Under his contract, appellant had the right to expect that any purchaser produced within the year would enter into such a contract as would give him a reasonable time within which to convey a merchantable title and accompany his deed with an abstract showing a merchantable title; and if the purchaser produced was unwilling to take on such terms, he was not the purchaser contemplated by the agreement between appellant and respondent. No time being fixed in the contract for the conveyance of a merchantable title accom-

panied by an abstract showing same, a reasonable time within which to perform after notice to appellant that a purchaser was found was impliedly given the vendor, and he had the right to expect that the purchaser would take on such terms. [Page on Contracts, vol. 2, sec. 1154; Chunn v. O'Neill Lumber Co., 175 Mo. App. 641, 158 S. W. 94; St. Clair v. Hellweg, 173 Mo. App. 660, 159 S. W. 17.

Appellant correctly maintains that under the law as announced in these decisions the trial court erred in the refusal of his instruction No. 1 and in the giving, of its own motion, of the principal instruction in the case. Instruction No. 1, which was refused, correctly declares the law as to the question of reasonable time. The latter part of this instruction, it is true, placed upon appellant a greater burden than the law placed upon him, and this should be corrected upon retrial.

The instruction given by the court of its own motion, contained, among others, the following paragraphs:

"The contract is dated Feb. 1, 1911, and the right to sell under the contract extended for a period of twelve months.

"The defendant was obligated under said contract to furnish an abstract showing a merchantable title to the land. Now if within the said time the plaintiff procured a purchaser who was ready, able and willing to buy the land upon the said terms and if the sale was prevented on account of the fact that defendant could not or did not furnish such abstract then you will find the issues for the plaintiff and assess his damages at whatever sum in excess of eight thousand dollars that you may find from the evidence that such purchaser agreed to and was willing to pay for said land."

This instruction clearly required the defendant to stand prepared at any time a purchaser was produced to immediately deliver an abstract showing a merchantable title or answer to respondent for his commis-

sion. In other words, this instruction required defendant to have his abstract ready on February 1, 1912, and denied him a reasonable time within which to perform, to which he was entitled under his contract. The giving of this instruction and the refusal of defendant's instruction No. 1 clearly mark out the theory on which the trial court put the case to the jury, i. e., a construction of the contract between plaintiff and defendant making time of the essence, in requiring the defendant to be ready immediately on the production of a purchaser.

Error is assigned in the action of the trial court in excluding the decree rendered at the November, 1910, term of the circuit court of Dent county, hereinbefore mentioned. The record before us does not show any infirmity in this decree. It contained a finding that all the Clark heirs had given their consent to the execution of the deed by the executrix. Although it is true there was no showing that the decree had been recorded, or that it was shown by the abstract, or that respondent knew anything about it, this decree is admissible for the purpose of showing that appellant might have recorded it and had his abstract show it within a reasonable time after February 1, 1912.

It follows from what has been said that the judgment should be reversed and the cause remanded. *Robertson, P. J.,* concurs in the result. *Sturgis, J.,* concurs.