George A. MARTIN, Respondent,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Appellant.

No. 48017.

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1960.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 12, 1960.

Richard H. Koenigsdorf, City Counselor, Robert A. Meyers, Asst. City Counselor, John J. Cosgrove, Assoc. City Counselor, Kansas City, for defendant-appellant.

James W. Benjamin, Robert L. Shirkey, Rogers, Field, Gentry & Jackson, Kansas City, for plaintiff-respondent.

VAN OSDOL, Special Commissioner.

In this action for personal injuries instituted by plaintiff George A. Martin

against defendant City of Kansas City, plaintiff had verdict and judgment for $30,000. Defendant City has appealed.

March 6, 1952, plaintiff, a driver of a van-type truck, having approached from the south, brought his vehicle to a stop just north of a driveway on the west side of Kansas Avenue between 14th and 15th Streets in Kansas City, Missouri. He was intending to make a "pick-up" at a business house on the west side of the street. In getting out of the truck, plaintiff stepped backward and fell into a hole in the parkway between the sidewalk and the curb and was injured. The hole or excavation was approximately five feet long, thirty inches wide and fourteen inches deep. Plaintiff introduced evidence tending to show that the excavation was filled with snow. The excavation had been made by defendant City's employees December 17, 1951. When plaintiff fell and was injured there was no warning sign or barricade at or near the excavation.

Plaintiff's case was submitted to the jury on negligence of defendant in failing to fill the excavation, or to warn of its presence by sign or barricade. At defendant's instance, the trial court submitted plaintiff's contributory negligence on the theory that he saw or, in the exercise of ordinary care, could have seen the hole in time to avoid it and failed so to do.

Herein upon appeal defendant City contends the trial court erred in refusing to direct a verdict for defendant. It is urged (1) that plaintiff in testifying made the statement that he saw the hole when he "drove up there," and that the statement was a solemn judicial admission binding him on the issue of his contributory negligence; (2) that, even if plaintiff's statement were to be considered as not conclusive, and so was such as would permit him to introduce evidence contrary to or in contradiction of the statement, the contradictory evidence introduced by plaintiff was so contrary to physical facts as to be unworthy of belief; (3) that, bound as he

was by the admission that he saw the hole when he drove up and having stepped backward out of the truck without looking where he was stepping, plaintiff was, as a matter of law, guilty of contributory negligence; and (4) that plaintiff's principal verdict-directing Instruction No. 1 was erroneous in submitting defendant's negligence in failing to provide a warning sign or barricade because, inasmuch as plaintiff saw the hole, there was no need for a warning. Defendant also contends plaintiff's measure of damages Instruction No. 5 was erroneous, and that the verdict was excessive.

Relating to contentions of error Nos. (1), (3) and (4)—it is at once apparent that these contentions are related and the merit of all and each of them depends, at least in part, upon whether the statement (that he saw the hole "when I drove up there") was binding as a judicial admission.

■ The principle which defendant seeks to invoke has been tersely stated in Burris v. Kansas City Public Service Co., Mo.App., 226 S.W.2d 743, 747: "But a party's testimony on the stand as a witness may be of such a nature as to have the effect of a judicial admission which not only relieves the opponent from adducing evidence, but precludes the party himself from disputing it, either by his own testimony or by other witnesses. Wigmore, Evidence, sec. 2495a (3d Ed.). Thus, if a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. In the absence of such an explanation, the party may not have the benefit of any testimony which is contrary to his own testimony, * * *." See also Smith v. Siercks, Mo. Sup., 277 S.W.2d 521.

The analysis of these contentions, Nos. (1), (3) and (4), calls for quotations of plaintiff's testimony relating to his approach and observation of the place of his injury.

On direct examination plaintiff testified as follows:

"Q. As you proceeded to get out of the truck, tell the jury how you turned your body to get out. A. I turned it to the left and got out backwards.

"Q. What is that? A. I noticed the hole when I drove up there.

"Q. You could see the hole? A. Not the hole, but I noticed the parkway was just snowed over; I couldn't see any mounds or anything.

"Q. Were there any barricades or anything? A. No, sir."

On cross-examination plaintiff testified—

"Q. I think I understood you correctly when you answered a question given to you by the lawyer here. You say you noticed the hole when you drove up there. Was that your testimony? A. No, sir, I noticed the parkway.

"Q. I am sorry, I must have misunderstood you. I thought you said you noticed the hole as you drove up there. I tried to write it down as you said it. A. I am sorry.

"Q. You said you noticed the hole when you drove up there. Was that your statement, or not? A. If it was, I am sorry; I didn't mean that, I meant that I noticed the parkway."

Defendant cites and greatly relies on Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S.W. 177, 178. In that case, plaintiff Steele had understandingly and definitely testified that he had been struck by defendant's train at a point 200 feet east of Walnut Street just "immediately after" he had "stepped over on the north track". Without any intimation on the part of his counsel that plaintiff would again be called to the witness stand, plaintiff was excused as a witness. Presently, the court adjourned for the evening. Thereafter, plaintiff and his counsel visited the scene of the casualty. The following morning plaintiff was again called to the stand. He thereupon testified that he had moved onto the north track at Walnut Street, and had walked eastwardly between the rails of the north track to the place where he was injured. He had walked on the north track "a couple of minutes, I guess, before I was struck". On cross-examination plaintiff Steele said that if he testified the preceding day that he had stepped right in front of the train, "I didn't mean it".

■ Similarly, on cross-examination, plaintiff in our case testified that he "didn't mean that * * *". But in our case plaintiff Martin made the correction in his examination-in-chief in answer to the very next question propounded by his counsel. There was no unequivocal reiteration of the statement as was the fact as shown by this court's quotations from the transcript in the Steele case (265 Mo. at pages 102–105, 175 S.W. at pages 177–178). We note also that in making the statement plaintiff Martin seemed to be explaining why he got out "backwards". He had looked when he "drove up there". We believe that plaintiff Martin's statement reasonably could have been an inadvertence of use of the word "hole" without an appreciation for the moment of the significance of the difference in use of the word and some word descriptive of the place, the parkway, where the hole was disclosed only when he stepped and fell into it. His correction, made at once, and his further testimony, some of which we have quoted supra, are entirely consistent with such a conclusion which the jury apparently drew and, to us, this seems reasonable. Certainly there is no basis here for the sure conclusion that plaintiff Martin was making the trial court a "hotbed" for the "germination" of perjury as was this court's view of the circumstances and of the original and contrary testimony of Steele.

■ This is not to say that the triers of the fact could not have ignored plaintiff's correction and explanation and found for defendant on the issue of contributory negligence since plaintiff tacitly admitted he did not look when he stepped backward from the truck. But, we have the opinion that plaintiff's correction and explanation brings him within the qualifying language of Burris v. Kansas City Public Service Co., supra, and saves him from the principle stated in that case. The trial court correctly allowed the jury to consider plaintiff's correction and explanation, and his testimony and that of his witness Smith that the hole was "snowed over"; or, as stated by Smith, "The hole seemed to be filled up, or the hole I would say was hidden generally from a person's view; it was hidden from his view and there was no way of telling what was underneath this snow. * * * I could see nothing but the hole he (plaintiff) made in the snow. * * * there might have been a half-inch depression * * *. It just showed a little bit of disturbance but not directly straight across. I don't believe you would fill a hole like that directly straight across."

Plaintiff, in testifying, made an estimate of the size of the hole. This, according to defendant, indicates that the hole must have been clearly delineated before plaintiff fell into it. Of course, defendant's counsel could have made this argument to the jury, and probably did. Our examination of plaintiff's testimony indicates to us that plaintiff's estimate could fairly be said to have been based upon how large the hole appeared to plaintiff by observing the depression made in the snow by his body when he had fallen.

(2) Nine and one-tenth inches of snow had fallen in Kansas City during the first four days of March, 1952; and on March 5th at six-thirty in the evening seven inches of snow remained on the ground, the depth of which decreased to six inches in the following twenty-four hours. Defendant argues that (inasmuch as there was snow on the ground to the depth of only six or seven inches when plaintiff fell into the excavation fourteen inches in depth and no evidence that the excavation was filled by snow drifting with the wind or by some other force) plaintiff's testimony (and that of his witness Smith) is "so contrary to physical facts as to be self-destructive and unworthy of belief". However, in reading the transcript we have found no evidence proving that a hole fourteen inches deep cannot become filled with snow by drifting winds or other force over a period of several days during which approximately nine inches of snow has fallen, and we know of no definitely established physical law or fact that a hole of such depth could not be so filled.

Our conclusion is that the issue of plaintiff's contributory negligence was for the jury. And, since there was substantial evidence tending to support defendant's factual theory that he had looked and did not see the hole, it should not be said that, as a matter of law, a warning sign or barricade would have been of no avail in warning plaintiff. It was not error to submit to the jury negligence of defendant in failing to warn or barricade.

■ A further contention of error is made in connection with plaintiff's Instruction No. 1. It is said the instruction is erroneous in failing to require the finding that plaintiff did not know the hole was there, or, in the exercise of ordinary care, could not have seen the hole in time to avoid it. It is urged that this issue was an essential factual issue and should have been specifically included in plaintiff's principal verdict-directing Instruction No. 1. But the instruction did submit the negative of plaintiff's contributory negligence by requiring the finding that "the plaintiff George Martin was at all times in the exercise of ordinary care for his own safety"; and at defendant's instance the trial court gave Instruction No. 11 which directed a verdict for defendant if the jury found "that plaintiff saw, or, by the exercise of ordinary care, could have seen said hole

in the parkway * * * and if you further find that plaintiff knew, or, in the exercise of ordinary care, could have known that said hole * * * rendered said parkway dangerous and unsafe for use by one in the exercise of ordinary care for his own safety, in time to have avoided ·said hole in safety by the exercise of ordinary care, but failed so to do * * *". Plaintiff's verdict-directing instruction, as noted supra, negatived plaintiff's contributory negligence, and defendant's Instruction No. 11 submitted contributory negligence. See now Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14, and Shepard v. Harris, Mo.Sup., 329 S.W.2d 1. We see no prejudicial fault in plaintiff's instruction, No. 1, in any respect of which defendant complains. It would seem the instructions, read together, fairly submitted plaintiff's case and defendant's defense.

·..We rule contentions Nos. (1), (2), (3) and (4) adversely to defendant.

■ Plaintiff's measure of damages Instruction No. 5 advised the jury that if the verdict was for plaintiff then it became the jury's duty to assess damages in such a lump sum "as will reasonably and justly pay or compensate him for the injuries and *conditions* directly resulting from the negligence of the defendant * * * as shown in evidence * * *". (Our italics.)

Defendant asserts the term "conditions" is a very broad one and the jury could have included many unlawful items such as "plaintiff's aversion for work of any kind, his obvious belief that he should be supported without working, his baseless contention that he was.in such a nervous mental condition as to be incapable of doing any work whatsoever, physical or otherwise". Of course, defendant is here asserting defendant's version of the nature and origin of plaintiff's "condition". As will be more fully developed infra, there was substantial evidence that, as a result of the trauma plaintiff experienced in falling, plaintiff developed a neurosis. A psychiatrist testified, generally, with respect to the effect in some cases of traumatic experience, and intimated that such an experience "might" or "possibly could" be an unconscious thing, and that a particular patient might have that in mind, and that this in connection with his physical condition "might explain why he is not working". Says defendant, this evidence was neither sufficient to support a verdict nor should it have been considered by the jury in making an award. See Kiger v. Terminal R. Ass'n of St. Louis, Mo.Sup., 311 S.W.2d 5. The witness, however, in speaking particularly of plaintiff's trauma and its effect said that plaintiff's fall "caused what you see now in the patient from the psychiatric diagnosis you now find". Counsel for both of the parties in their interrogation of witnesses sometimes referred to plaintiff's physical and nervous "conditions", and so did the medical witnesses. It is further observed that Instruction No. 5 authorized a recovery in damages "for the injuries and conditions directly resulting" from defendant's negligence. We have the opinion that jurors of average intelligence would understand they were to compensate plaintiff only for those physical and nervous injuries and conditions as were shown by the evidence to be directly attributable to the trauma experienced when he fell. Moreover, defendant, if its counsel desired, had the privilege of tendering an instruction more particularizing or limiting the damages to be allowed by the jury. Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S.W.2d 1079; Rush v. Hollingsworth, Mo. App., 89 S.W.2d 535.

■ Was the jury's award, $30,000, excessive?

Plaintiff in falling sustained injuries in his low back. He was thirty-two years old at the·time. He had attended grade school for seven years, and then "cut timber", helped his father in carpenter work, and shoveled coal. He later was employed in dock work for motor carriers. He had been engaged almost entirely in heavy manual labor. He lifted freight "anywhere from 100 pounds on up". He had no difficulty with his back. He enjoyed hunting and fishing.

"He was a pretty jolly fellow." When injured he was being paid $1.40 per hour. In the summer of 1952, after his injury, plaintiff worked for a plumber for about a month, but "I just couldn't take it". He was getting awfully nervous. His back was very painful and he got sick at his stomach. He has not had a pain-free day and has actually earned but $200 since injured.

After plaintiff fell he continued his work for the day. He didn't notice anything wrong with his back until he went to bed. He developed pain, and applied a hot-water bottle. The following day his employer sent him to the employer's physician who gave plaintiff heat treatments for a time and then plaintiff was confined to Menorah Hospital for eleven days. His condition was diagnosed as "bilateral lumbar sprain". He was given heat therapy and put in traction. It was the opinion of a physician that plaintiff has "a permanent partial disability referable to his back of 15 to 20 percent". The fall and injury also occasioned neurosis. Plaintiff consulted a physician who gave him tranquilizers for a time, and then he was hospitalized for six months in Nebraska Psychiatric Institute where he was given tranquilizers, psychiatric tests and electrical shock treatments. He was in the "shock area" for a little over thirty days. He was later admitted to St. Joseph Hospital (in Omaha) where he remained for five and a half months. And, still later (in 1957) he was confined in the Psychiatric Receiving Center, Kansas City, for approximately six months; and again for ten days in July of 1959. A psychiatrist, who had treated plaintiff, diagnosed plaintiff's "condition" as an anxiety reaction with depressive features —a neurosis—"inability to function comfortably and adequately in social or economic adjustments". As stated supra, the doctor expressed the opinion that the fall and injury in 1952 precipitated the symptoms and "caused what you see now". Plaintiff's neurosis is of "such severity now I would say it is going to be with him in some degree for a lifetime". He is definitely disabled for heavy labor at this time, and permanently, "assuming the back injury". A physician, witness for defendant, said, "I do not think there is any question but that he (plaintiff) is in need of further psychiatric care. * * * I could say that he has a neurotic condition that is partially ascribable to this accident".

Plaintiff is no longer a "pretty jolly fellow", and does not now engage in sports. His demeanor was described by lay witnesses in lay language quite the equivalent of the medical testimony of physicans in speaking of plaintiff's nervous affliction as a neurosis —an anxiety reaction with depressive features.

Plaintiff with something less than a common school education; being inexperienced in any work other than heavy manual labor; suffering from a painful injury to the low back; and afflicted with a neurosis has little chance of again obtaining steady lucrative employment. And it is noted that even now he has lost several thousands of dollars in wages. His extended periods of hospitalization with radical therapy are also noted. We have examined the cases cited by the parties and note one, Timmerman v. Terminal R. Ass'n of St. Louis, 362 Mo. 280, 241 S.W.2d 477, which treats with the question of the excessiveness of an award to a plaintiff whose injuries were somewhat comparable and were, as in our case, a combination of back injury and traumatic neurosis. In the Timmerman case, decided in 1951, an award of $35,000 was allowed to stand. Timmerman had been receiving larger annual earnings than the yearly aggregate of Martin's hourly wage. But Timmerman was older. And it would seem Timmerman was not obliged to endure the extended periods of hospitalization with radical therapy as was plaintiff Martin.

Considering the factors to be taken into account in determining the question of the excessiveness of a verdict, we believe that we are not justified in requiring a reduction of the award.

The judgment should be affirmed

It is so ordered.

**652**

PER CURIAM.

The foregoing opinion by VAN OSDOL, Special Commissioner, is adopted as the opinion of the Court.

All concur.