HARRIET E. DOLL ET AL., APPELLANT, v. PURPLE SHOPPE, RESPONDENT.·
—90 S. W. (2d) 181.

Kansas City Court of Appeals. January 6, 1936.

*S. W. James, Jr.* and *Ira H. Lohman* for appellants.

*James T. Blair, Jr.* for respondent.

REYNOLDS, C.—The plaintiffs, Harriet E. Doll, Adolph Doll, J. Frank Doll, and John H. Ryder, are co-partners doing business under the name of Norm Company and are engaged in the preparation of advertising matter consisting of a series of advertisements for use by merchants and others in advertising their businesses through newspapers and other media and in the sale of such use to merchants for stated periods. Their place of business is in New York. The defendant, Purple Shoppe, Inc., is a corporation engaged, at Jefferson City, Missouri, as a merchant in the sale of ladies' ready-to-wear goods.

On October 6, 1933, this suit was instituted by the plaintiffs before John G. Leslie, a justice of the peace within and for Jefferson town-

ship, Cole County, Missouri, against the defendant by the filing of the following account by them before said justice:

"New York, Sept. 23, 1933.

"Purple Shoppe, Inc.,
"Jefferson City, Missouri.

"In Account with
N O R M    C O.
454 Fourth Ave.
New York

| "Nov. 4, 1932 | Right to use 52 mats and copy as per contract dated Nov. 2, 1932, | $208.00 |
| | Credits 1-7-33 | 69.66 |
| | | 138.34 |
| | Postage | .51 |
| | | $138.85" |

A copy of the contract referred to in said account was filed with it; and such contract, omitting captions and signatures, is as follows:

"Reserve for (ME) (US) the right to use your Interrupting Advertising series in advertising the Ladies Ready to Wear business in newspapers of and other media of Jefferson City State of Mo only, during the term of this contract and any renewal thereof and furnish (ME) (US) Four or Five mats monthly F. O. B. New York, by mail. Size of mats to be about two columns wide. Begin shipping as soon as possible.

"For the right to use the above mentioned series as stated above (I) (WE) agree to pay you at New York at the rate of Two Hundred Eight -00 100 Dollars, ($208.00) yearly, payments for the first year to be made as follows:

"Fifty-two 00-100 Dollars ($52.00) upon sign of this agreement 30 days from date and Seventeen 33-100 Dollars ($17.33) on the first of each month thereafter until the yearly contract price (above stated) has been fully paid. (I) (WE) agree also to reimburse you monthly for postage used in shipment.

"Fifteen days after failure to meet any of the payments due, the whole amount remaining unpaid shall become due and payable forthwith.

"The term of this contract shall be for a period of ONE YEAR from date of first shipment and this contract shall be deemed renewed for a further period of one year, including this provision for renewal, unless at least sixty days prior to its expiration Norm Company shall receive from (ME) (US) by registered mail notice of (MY)

(OUR) intention to terminate the contract at the end of the contract year. The terms and conditions of any renewal shall be the same as above, except that the yearly price shall be paid in twelve equal monthly installments, beginning the first of the month following date of first shipment of the renewal.

"It is understood that Norm Co. agrees not to furnish the above named series to anyone else in the place or places designated above during the term of this contract or any renewal of it, so long as there shall be no default by (ME) (US) and (I) (WE) agree that the use of this series or any part thereof shall terminate with this agreement.

"(I) (WE) understand that (I) (WE) shall arrange for publication in newspapers and other media and pay the cost of same, and that NORM CO. assumes no responsibility for cost or rate of publication.

"Neither party will be held responsible for any provisions or representations not embodied in writing herein and this contract is not subject to cancellation. This agreement is subject to the acceptance of Norm Co. at New York. Dated Nov. 2, 1932."

The defendant appeared and filed answer before the justice, which in substance set up that the execution of the contract referred to in the account filed was induced and procured by false and fraudulent statements and misrepresentations made to it by the salesman of the plaintiffs, as their agent, at the time such contract was made and immediately prior thereto, to the effect that the advertising matter called for by the contract was such as to be suitable to its particular needs in the operation of its business in the particular community in which it was being conducted; that such matter would be prepared and developed by advertising experts who were able to prepare advertisements of the kind and character required in its particular business, having the capacity and effectiveness to increase the volume of its particular business and trade at least fifty per cent; that the defendant was unfamiliar with advertising methods, not having had any experience in such matters, and was unable to recognize any defect in the methods to be employed as presented by plaintiffs' agent; that the plaintiffs' salesman represented that plaintiffs and their representatives were experts in the matter of advertising and in the methods to be employed and had particular knowledge concerning the value of various advertising methods which might be employed advantageously in the operation and development of defendant's business; that such representations so made by plaintiffs' salesman to defendant were at the time that they were made false and untrue and known by plaintiffs and their agents to be false and untrue and were knowingly made for the purpose of inducing the execution of such contract by defendant; that defendant, wholly relying on such rep-

resentations being true, as to the value of the advertising matter furnished under the contract, was induced to enter into and execute said contract; that the advertising matter furnished it under said contract was not suitable or adapted to the needs of defendant's business, but consisted wholly of advertising mats so general in their nature that they might be sold to any one in a similar business, without reference to any particular need arising from the character of the business being conducted, its location, and the class of purchasers residing in the community to whom sales might be made and had no capacity or effectiveness whatever to increase its business or trade; that such advertising matter was so general in its nature, in using it, defendant was wholly unable to compete with other merchants in the same line of business in the same community who placed advertising in the newspapers listing their merchandise offered and specifying the prices asked therefor; that, relying wholly on plaintiffs' representations as to the value of the advertising matter to be furnished by them under the contract, the defendant used only such advertisements as were furnished it by the plaintiffs and omitted the use of other methods and, by reason of so doing, its patrons were not informed as to the specific merchandise it had for sale or the prices at which such merchandise was offered and its business was caused to suffer and decline and it sustained damage in the premises in excess of the contract price sued for. Defendant by its answer further made counterclaim for the sum of $69.40 (the amount which it had paid plaintiffs on the contract price) as damages incurred by it by reason of having been wrongfully induced to enter into such contract, upon which counterclaim it prayed judgment against the plaintiffs.

To said answer, the plaintiffs filed a reply, by which it was denied that the execution of the contract in question by the defendant was induced or procured by fraudulent statements or misrepresentations made to it or its representative by plaintiffs' representative, or their salesman, as set up in such answer. The reply further admitted various allegations in the answer which it is unnecessary here to set out.

The cause was tried before the justice and, from the judgment rendered by such justice, was appealed to the Circuit Court of Cole County, where it was tried again before the court and a jury on the same account, answer, counterclaim, and reply on December 12, 1934, resulting in a verdict and judgment in favor of the defendant and in a judgment in the sum of $69.40 in its favor on its counterclaim, from which judgment, after a timely and unsuccessful motion for a new trial, plaintiffs prosecute this appeal.

The evidence in the record tends to show the facts to be that, on November 2, 1932, one Max H. Starr, a traveling salesman for the plaintiffs, while in Jefferson City, called at the defendant's place of business for the purpose of soliciting a contract from defendant for

the use of plaintiffs' advertising series to be particularly designed for use in defendant's business. While there, he met Mrs. Statie Wrightsman (the president of the defendant who was in charge of its business) and where, in the course of a conversation covering at intervals a greater part of a day, he explained to her the advantages to be derived by defendant from the use of such series and prepared a contract, which was exhibited to her and the various provisions thereof were explained by him to her, for her execution in behalf of the defendant, which contract so made out and presented to her was by her executed in behalf of the defendant company. In the course of the conversation, which was continually interrupted at intervals throughout the day, and prior to and at the time of the execution of the contract, Starr stated to Mrs. Wrightsman that the series of advertising matter which it was agreed was to be furnished defendant under such contract was suitable to the business conducted by defendant and its particular needs and was a series that defendant should use; that the full series of such advertisements was or would be prepared by experts in the matter of the preparation of suitable advertisements calculated to produce beneficial results when used in defendant's business; and that such series would be prepared for the exclusive use of defendant in its business and with reference to the requirements of its particular needs and would be such as, when consistently used, would have the capacity to produce an increase in its business and trade of at least fifty per cent over what it was at such time. The evidence tends further to show that defendant was inexperienced in the matter of advertising and the suitable and best methods to be employed; that, while it had been in business for some seven or eight years and over, it had never studied such questions and did not know the special forms or methods of advertising that might be the most suitable for its business and of most advantage to it; that it had always advertised in a general way through the newspapers, with the newspaper suggesting the advertisement to be made and the form thereof; that the plaintiff had had many years of experience in furnishing advertisements for various lines of business and the forms of advertisements for various lines of business and the forms of advertising best adapted for use from which the most advantage might result to any particular business and were experts in the matter of determining the character of advertising most desirable and advantageous for use in sundry lines of trade and business in the particular locations where found. Mrs. Wrightsman testified that, at the time of the execution of the contract by her for the defendant, there had never been exhibited to her any of the proposed advertisements or the forms thereof that were to be furnished defendant but that the only forms exhibited were forms being furnished by plaintiffs for use by gasoline stations, grocery stores, and the like, which were claimed to

be designed for use in such lines of business; that, at the time that she signed such contract, she was wholly uninformed as to the suitability of the advertising matter proposed to be furnished defendant by plaintiffs for its business or of the advantage to be derived through its use to its business or of its capacity and effectiveness to produce beneficial results in connection with the advertisement and operation of its business, other than such information as was given her with respect thereto by plaintiffs' traveling salesman; that she was induced to sign said contract for the defendant by reason of the statements made to her by said salesman with reference to the desirability and suitability of said advertisements for defendant's trade and to the beneficial results and advantages to be had by it in the operation of its business through the use of the same and especially by his statement with respect to its effectiveness to increase defendant's business and trade at least fifty per cent by bringing more people into its place of business; that she had no information or knowledge whether the use of such advertisements would so increase defendant's trade or whether it was calculated so to do or not, other than that which was acquired by her from the statements of said salesman and that she relied wholly on the statements of said salesman and that she relied wholly on the statements made by him as to such advertisements and their value and the beneficial results and advantages to be derived from the use thereof and as to their effectiveness to bring about an increase in defendant's business and trade by the use thereof and that she was induced wholly by such statements to execute such contract in behalf of defendant. Such contract, upon its execution by the defendant, was immediately by the salesman transmitted to plaintiffs at their offices in New York City, where it was promptly accepted by them; and defendant was promptly notified of such acceptance by letter of date November 4, 1932. Later, on November 10, 1932, plaintiffs forwarded to defendant the first five advertisements of the series to be used (called for by such contract), which defendant accepted and used; and plaintiffs thereafter caused such advertisements to be mailed defendant for its use under said contract each month, upon a monthly basis of four or five per month, until fifty-two of such advertisements or the complete series as called for by the contract had been forwarded to the defendant.

It appears, however, that the defendant ceased using the advertisements forwarded it after the month of February, 1933, for the alleged reasons that they were unsuited for the lines advertised and proved unsatisfactory and hurt rather than helped its business and produced no beneficial, productive, or satisfactory results and that they provoked much unfavorable comment from the public and from its trade, which tended against its trade and business. It found it unprofitable to use them further. Shortly prior to the time it stopped

using them, it had paid plaintiffs $69.40 under the contract, in installments pursuant to the terms thereof; but, after having paid such sum, it refused to make any further payment on account of the same under the contract.

After delivery of the complete series had been made by the plaintiffs to the defendant and after the defendant's refusal to pay the balance of the contract price therefor in excess of the sum of $69.40 paid during the first three or four months covered by such contract, this suit was filed for such balance.

OPINION.

The plaintiffs assign error on this appeal as follows: (1) The verdict is against the evidence and the weight thereof and the law as applied to the evidence. (2) The court erred in giving defendant's instruction C to the jury. (3) The court erred in allowing defendant to offer evidence contradictory to the written contract over objections of the plaintiffs.

(1) The plaintiffs first contend that the verdict is against the evidence and the weight thereof and is against the law as applied to the evidence and that it is in conflict with the instructions of the court.

In support of such contention, they urge that the only misrepresentation alleged and proved in the evidence is one to the effect that the advertising matter proposed to be furnished defendant by the plaintiffs under the contract would increase defendant's business at least fifty per cent; that such misrepresentation amounted to a mere promise as to something that would result in the future and was neither coupled with the misrepresentation of an existing fact nor made with relation to an existing fact and was not sufficient to entitle defendant to avoid the contract for fraud; that, in order to avoid a contract upon the ground that its execution was obtained by means of fraudulent misrepresentations and statements, such misrepresentations and statements must either relate directly to an existing fact or be connected in some manner with the misrepresentation of an existing fact.

With such latter statement, we have no quarrel. It is supported by the authorities cited by plaintiffs in their brief.

We are not, however, prepared to agree with the plaintiffs in their contention that the false representations made to the effect that the advertising matter proposed to be furnished by plaintiffs to defendant under the contract would increase defendant's business at least fifty per cent amounted to a mere promise as to something that would result in the future and was not coupled with any misrepresentation of an existing fact and had no relation to an existing fact.

It has been held that false statements, although future in form, if they refer to the suitability or capacity of a certain article or device for a proposed use or for the production of stated results, when

made by one having or professing to have superior knowledge based on the past experience of others, are not mere opinions relating to future events or mere promises relating to results in the future rather than to existing facts, but that such statements amount to and are in effect false representations of existing facts and conditions and support allegations of fraud. [Wendell v. Ozark Orchard Co. (Mo. App.), 200 S. W. 747; Keithly v. Mutual Life Ins. Co. of New York, 271 Ill. 584; Rabenau v. Harrell, 278 Mo. 247, 213 S. W. 92; Luchow v. Kansas City Breweries Co. (Mo. App.), 183 S. W. 1123.]

The facts in the record in this case bring it within the rule announced in Wendell v. Ozark Orchard Co., supra, and other authorities above cited; and it is therefore held that the statement made by plaintiffs' representative to the defendant that the advertising matter proposed to be furnished by plaintiffs to defendant under the contract which defendant was being solicited to execute would increase defendant's business at least fifty per cent amounted to and was in effect a representation of existing facts and conditions and, being false, supported defendant's allegations of fraud and that plaintiffs' contention to the contrary is not well made.

We are not concerned with the weight of the evidence. That is a matter for the trial court. That such statement was made and that it was false are supported by substantial evidence in the record.

(2) Plaintiffs next complain of defendant's instruction C in that it purported to cover the entire case and direct a verdict for the defendant if the jury should find that plaintiffs represented to defendant that the advertising matter proposed to be furnished by plaintiffs would increase the business of defendant fifty per cent. Plaintiffs' contention in such regard seems to be that such representation, if made, was, as a matter of law, insufficient upon which to predicate fraud and that the court erred in submitting the case upon such representation by such instruction. Such contention is sufficiently disposed of by what has been said in section (1) of this opinion. It is unnecessary to enter into a further discussion of the point sought to be made. The complaint is not well made.

(3) Plaintiffs next complain of defendant's instruction C in that it purports to cover the entire case on defendant's counterclaim and to direct a verdict thereon without including in the matters submitted therein material defenses made by plaintiffs to any recovery by defendant on such counterclaim. It fails, however, to point out the defenses so made against such recovery that are omitted from such instruction. No question for review therefore is presented under such complaint.

(4) Plaintiffs also complain of instruction C to the effect that it authorizes a verdict for defendant on its counterclaim for damages and directs the jury that, if it believes that the defendant has suf-

fered financial loss as a result of relying on the misrepresentations of plaintiffs, its verdict should be for the defendant for such damages in such sum as it might believe would reasonably compensate it therefor and that it assumed that false representations had been made. The instruction is not open to the objection that it assumed as a matter of fact that false representations had been made. An examination of the instruction as a whole reveals that it requires the jury first to find from the evidence that such representations had been made and that they were false.

The contention, however, that such instruction was erroneous in directing the jury to return a verdict for defendant on its counterclaim for damages, if any, in such sum as would reasonably compensate it, if it believed from the evidence that defendant had suffered financial loss, without also advising the jury as to the elements of such damages which might be considered by it, is well taken. It amounted to a mere roving commission to the jury. [Camp v. Wabash R. Co., 94 Mo. App. 272, 68 S. W. 96; Rhodes v. Holladay-Klotz Land & Lumber Co., 105 Mo. App. 279, 79 S. W. 1145; Kick v. Doerste, 45 Mo. App. 134; Morrison v. Yancey, 23 Mo. App. 670; Exchange National Bank v. Daley (Mo. App.), 237 S. W. 846.] The measure of damages in actions for breach of contract is a matter of law for the court to declare in its instructions to the jury and not a matter for the jury to guess at or speculate on. [Rhodes v. Holladay Land & Lumber Co.; supra, and authorities therein cited.] Appellate courts strictly set their faces against the practice of issuing "a roving commission" to juries to establish their own standards of damages in place of those defined by the rules of law. Such modes of instruction are objectionable and considered reversible error where injurious results follow; and, in the absence of any showing that it is harmless error, it will be assumed that it is prejudicial. [Camp v. Wabash R. Co., supra.]

While said instruction is erroneous in the particulars of which complaint is made, now under consideration, and should not have been given in the form that it is, still in our opinion, under all of the facts in the record, it occasioned no prejudice to plaintiffs' rights and should not cause a reversal of the judgment of the trial court.

The verdict of the jury was for defendant on the counterclaim in the sum of $69.40.

The record in this case shows that the only item of damages claimed by the defendant in its answer and counterclaim for which it seeks recovery is the item of $69.40 paid by it to plaintiffs and that its recovery is sought on the ground that the payment of such money and the execution of the contract under which it was paid were induced by fraudulent statements made by the plaintiffs to it. No other damage is claimed than that occasioned by the loss it sustained through

its payment, which it claimed to be a complete loss in the full amount of such item. It claimed no more, nor did it claim any less.

It appears that the court, in instruction No. 4 given the jury at the request of the plaintiffs, told the jury "that in order for it to find the issues herein against the plaintiffs and for the defendant upon its counterclaim, it is necessary for the defendant to affirmatively show that actual fraud was practiced by the plaintiffs, or their agent, to induce the defendant to enter into the contract in question and to pay the amount sought to be recovered from the plaintiffs."

The clear implication from such instruction is that, in the event that the jury should find from the evidence that actual fraud was practiced by the plaintiffs or their agent by which the defendant was induced to execute the contract in question and to pay the amount thereunder of $69.40 which it was seeking to recover on said counterclaim, then the jury should return a verdict for defendant on said counterclaim in such sum, so paid. This was all that the defendant, under its answer and under the evidence, claimed. The jury so found and returned a verdict for the defendant for such sum. We fail, under the circumstances, to see how the merits of the action were materially affected or how plaintiffs were prejudiced by the giving of instruction C covering the particulars complained of, although erroneous. The verdict of the jury was the same as it must have been under the evidence had instruction C been given in its proper form.

We are inhibited from reversing the judgment below unless we shall believe that the merits of the action are materially affected by the error in such instruction complained of. [Section 1062, Revised Statutes of 1929.]

(5) The plaintiffs further complain of instruction C that it directed the jury ". . . . and if you further find that defendant has not received the exclusive service the plaintiffs represented that the defendant would receive, and that such service has not resulted beneficially to defendant's business, as plaintiffs represented it would so result . . ." and that, in so doing, it assumed as true a controverted fact. We are not of the opinion that the instruction is open to such complaint. An examination of the instruction shows that the jury was required first to find that such facts were true.

(6) Plaintiffs make further complaint that instruction C assumed a controverted fact in directing the jury that, if defendant had not received what it was assured by the plaintiffs that it would receive by the representations made and what defendant paid for, then in such event, its verdict should be for defendant. An examination of the instruction as a whole shows that it is not subject to such criticism.

(7) Plaintiffs further complain that instruction C gives the jury a roving commission and fails to confine the damages to the evidence and is broader than the evidence and the pleadings and does not au-

thorize a judgment for the defendant except on the counterclaim and that it is misleading and confusing. We fail to see wherein it is misleading or confusing. The instruction purports only to cover the issues on the counterclaim; and it is not necessary that it should authorize a verdict other than on the counterclaim, even if proper so to do. The objection to the effect that such instruction gives the jury a roving commission, fails to confine the damages to the evidence, and is broader than the evidence and the pleadings is sufficiently disposed of by what has been said under section 4 of this opinion in disposing of the objection there under discussion made to said instruction.

(8) The plaintiffs have not developed their assignment of error No. 3 or brought the same forward under the points and authorities in their brief or other part thereof. Under the rule applicable in such instances, they are held to have waived such assignment.

We have examined all of the points properly presented by the plaintiffs in their brief upon this appeal, and we are unable to find that any of such points justify a reversal of the judgment. The cause, upon the record, seems to have been fairly tried; and the judgment appears to be just and for the right party and is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Reynolds, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.