Henry A. JOHNSON, d/b/a Johnson Sheet Metal Works, Plaintiff-Respondent,

v.

ESTATE of John L. GIRVIN, Deceased, Defendant-Appellant.

No. 8186.

Springfield Court of Appeals.

Missouri.

Aug. 13, 1963.

Welker & Young, Web A. Welker, Linus E. Young, Portageville, for defendant-appellant.

J. H. Spears, West Memphis, Ark., Hal E. Hunter, Jr., New Madrid, for plaintiff-respondent.

RUARK, Presiding Judge.

This is an appeal from a judgment involving a claim by Henry A. Johnson, d/b/a Johnson Sheet Metal Works (whom we shall hereafter refer to as plaintiff), against the Estate of John L. Girvin (which will be referred to as defendant).

Plaintiff filed a claim in probate court on a date not shown, but evidently prior to June 19, 1961, because on that day change of venue was filed; and the case was subsequently tried in the circuit court. The claim is for "the sum of $9124.80 on account of labor and materials furnished." It states that an itemized statement of such claim showing dates and amounts is attached, but no such itemized statement was filed.

The defendant filed its combined answer and counterclaim wherein, after a general denial and plea for discharge, defendant charges that in the summer of 1960 deceased John L. Girvin entered into a verbal contract with plaintiff whereby, for the sum of $5800, plaintiff was to furnish labor and materials to construct an incinerator upon the premises of Girvin's gin; that plaintiff "guaranteed that the incinerator would automatically burn cotton hulls, refuse from the cotton gin, and refuse from the soybean elevator, as it was blown into the incinerator, and that if it didn't work it was his 'baby' "; that the incinerator was built but was not well-made or free from defects and would not automatically burn the refuse aforementioned; that because of such defendant had been required to expend the sum of $1,342.21 for labor and oil to burn the refuse, for which amount defendant prayed judgment. The pleading aforesaid further stated that deceased had contracted for plaintiff to do certain pipe work at the gin for the sum of $1,334.20; that $367.80 had been paid on that account; and that there remained the sum of $966.40 in dispute.

From the standpoint of the plaintiff, the case involves three separate items: (a) $1,334.20 for piping and duct work done on defendant's cotton gin. (b) $5,867.80 ($5800 as finally submitted to the jury) for the construction of what has been variously referred to as a hull burner, incinerator, or refuse burner to be operated in conjunction with defendant's gin. This claim was based on express contract. (c) $1,922.80 for the construction of a mote burner to be operated in conjunction with the hull burner abovementioned. This was apparently based upon *quantum meruit.*

From the defendant's standpoint the dispute combines (b) and (c). It was defendant's contention that the mote burner was built by the plaintiff as a part of his effort to make good on the contract to build an incinerator which would automatically burn the refuse from the gin.

As to (a), the pipe work, there is no dispute. It is admitted that the sum of $1,334.-20 was due for the work performed. It is also agreed that defendant advanced the sum of $367.80. We think it fair to state that the evidence shows this sum should go to the credit of the pipe work item, although the parties sometimes confuse matters by referring to it as a credit on the incinerator.

The main dispute in the evidence is whether the incinerator and mote burner worked. Defendant contends neither worked. Plaintiff contends that both of them, when correctly operated, did perform the function they were intended to perform.

Here, for a better understanding of some of the things involved, we think we should digress a little in order to discuss "motes." They are probably not those mentioned in Luke 6:41–42, since they appear to be a by-product caused in the operation of the new type of lint cleaner. The lint cleaner takes the fuzz off the cotton. As plaintiff explained it, it "doesn't come from the gin-saw, where the hulls and trash and stuff goes to the hull burner." The motes are a very light fuzz which "is lighter than air."

According to the testimony of plaintiff's son, who made the deal with Girvin, the deceased, plaintiff had just completed doing some pipe work for the Girvin gin and then negotiated the building of a hull burner. Witness and Girvin discussed the type and details of the contemplated burner. Girvin preferred a certain type of burner and plaintiff agreed to build it for the price and sum of $5800 plus tax.

"A. Well, at the time I sold the burner —it was the understanding that if Mr. Girvin wanted a screen on the burner that I would put it on there free of charge, but I told him them screens stopped up with that lint cotton and also told him that there was going to be a certain amount of this light fuzzy—fuzz —it is lighter than air, and ain't nothing but gunpowder and fzzzt, and floats for miles and miles and miles before it goes down. So, I agreed to put this screen on there if that was what he recommended, after he started ginning. Well, there was a disagreement on the height of the burner, so I come back down here and my brother was installing this burner. I went into Mr. Girvin's office, me and my brother, and I told Mr. Girvin I didn't mind putting another ten foot on the burner. It cost us about twelve hundred dollars. I didn't mind that, but if he wanted the screen or anything else on the burner that it would be to his expense. He agreed to that. So, we went to work and built the burner higher like he wanted it.

"Q. And what was the trouble with it that he wanted it higher?

"A. Well, he said his smoke was getting in the gin.

"Q. Did you build it up to the height that he wanted it?

"A. Yes, sir.

"Q. And at whose expense was that?

"A. It was ours."

He said that after the incinerator, with its increased height, was completed, Girvin told him, " 'Stop the motes from coming out of the top of that burner and I will give you a check in full.' " So, he built the mote burner. They never discussed the reasonableness of the charge ($1,922.80) for building the mote burner. "He just ordered it." He said that right after he built the mote burner Girvin got sick and went to the hospital. Girvin died December 2, 1960.

There was considerable evidence on the part of the defendant that the incinerator would not burn the hulls and other refuse and the mote burner would not burn the motes. The evidence indicates that defendant purchased a burner of different type the following year. Plaintiff's evidence on the other hand was that, when the burners were lighted and the valves properly adjusted for the load and type of work to be performed, they both worked and functioned correctly. It would serve no purpose to go into detail about this. The jury evidently believed the plaintiff, and there was sufficient evidence upon which such finding could be made.

Plaintiff's Instruction No. 1 stated that it was admitted that plaintiff and defendant contracted for the construction of an incinerator to burn cotton hulls and other refuse from the gin and bean elevator; and if the jury found that plaintiff did perform according to the terms of the contract and if the incinerator was not defective and did perform the function it was intended to perform according to the terms of the contract, then plaintiff should have verdict for $5800, less any sums the jury might find to have been paid on the contract.

Plaintiff's Instruction No. 2 was on the theory of a contract price of $1,334.20 for the pipe work (the item which is not in dispute) less any sums paid on such contract price.

Plaintiff's Instruction No. 3 was as follows:

"The Court instructs the jury that if you find from the evidence that at the instance and request of defendant, John L. Girvin, plaintiff furnished all labor and materials for the construction of a motes burner for the Farmers District Gin in Portageville, Mo. and that if you further find that the defendant was the owner of the Farmers District Gin in Portageville, Missouri, then your verdict shall be for plaintiff in such sums, if any, as you find are due plaintiff for such labor and materials furnished in the construction of said motes burner, if you further find that said motes burner was constructed by plaintiff, and if you further find that said motes burner performed the function of burning the motes as it was intended as defined in other instructions herein given to you."

Defendant's Instruction No. 5 was based on the premise that if plaintiff agreed to sell and construct an incinerator which would automatically burn the cotton hulls and other refuse from the gin and refuse from the bean elevator and further agreed if it didn't work the incinerator would remain the property of plaintiff, and if it did not so perform such work, then plaintiff could not recover therefor.

Defendant's Instruction No. 6 told the jury that if the incinerator did not work and defendant was compelled to expend $1,342.01 in order to dispose of the cotton hulls and refuse from the gin and soybean elevator, then defendant should have verdict on his counterclaim in the sum so expended, less the sum of $966.40, the amount admittedly due on account of the pipe work.

The verdict of the jury was as follows:

"We, the jury, find the issues herein joined in favor of the plaintiff and against the defendant and allow the sum of $8689.20, with interest from the 3-29-61 day of 3-29-62.[1]

"/s/ Johnnie B. Copeland
"Foreman

"We, the jury, find the issues herein in favor of the defendant on defendant's counter-claim filed herein, and award the sum of $367.80, with interest from the None day of ———, 19—.

"/s/ Johnnie B. Copeland
"Foreman"

1. How the jury got the date March 29, 1961 as the date when interest should begin to run we do not know.

The judgment simply recited the verdicts so found and "it is therefore ordered, adjudged and decreed by the court that judgment be entered in accordance with the verdict of the jury."

Defendant-appellant's first contention is that the verdicts are not responsive to the issues because the finding for the plaintiff is necessarily based upon the premise that plaintiff did comply with the contract, whereas the finding for defendant on the counterclaim necessarily presupposes the contract was *not* complied with. Therefore, the verdicts are self-destructive.

■ The jury could not have arrived at a verdict in amount of $8,689.20 (which was the full amount less the admitted payment) without finding in favor of plaintiff under Instruction No. 1, which submitted the construction of the incinerator in accordance with the contract; and also finding that the mote burner was of the full value claimed. They could not have found for defendant on the counterclaim without finding plaintiff did not comply with the contract and defendant was thereby damaged. Verdicts so inconsistent and contradictory cannot stand, because they destroy each other. They become *no* verdict. Barr & Martin v. Johnson, 170 Mo.App. 394, 155 S.W. 459; Ruth v. McPherson, 150 Mo.App. 694, 131 S.W. 474; Bauer Engineering & Contracting Co. v. Arctic Ice & Storage Co., 186 Mo.App. 664, 172 S.W. 417; Shaw v. Richards, 208 Mo.App. 671, 236 S.W. 405; Smoot v. Riebel, Mo.App., 274 S.W. 522; Blackman v. Botsch, Mo.App., 281 S.W.2d 532, 535; Smith v. Rodick, Mo.App., 286 S.W.2d 73.

■ It is likely that the jury was confused. It could well be argued that, since the credit of $367.80 was conceded by all parties, the jury took as the means of giving that credit awarding it on the counterclaim. This may be; nevertheless, the attempt by a court to *surmise* what a jury intended, ignoring what it plainly said, is a dangerous intrusion upon the fundamental and traditional concept which is a part of the bone and gut of our law, to wit, that the jury is supreme in determining questions of fact. Thus we have said that we may not speculate upon what a jury meant by what it said. Ralston Purina Co. v. Kennedy, Mo.App., 347 S.W.2d 462. Even if we should so speculate, a calculation will quickly show that the credit, to the exact penny, had already been given by reduction in the amount awarded to the plaintiff. Are we to speculate that the jury intended to give credit twice?

Whether or not defendant contributed to cause this fuddle by submitting an inconsistent defense of contract of sale only subject to approval and a counterclaim on theory of completed sale and breach of warranty, we do not find it necessary to decide. The fact remains that the verdicts destroyed each other.

■ While on the subject of this verdict, we suggest that the attempt to award interest was a nullity. One of the sacred cows of the Missouri appellate courts is the rule that the jury must compute the interest, even where the process is simply an arithmetical, mechanical process. Mercantile Trust Co. v. Dulle, Mo., 282 S.W. 414, 416; Johnson v. Grayson, 230 Mo. 380, 130 S.W. 673, 680; Lajoie v. Central West Casualty Co. of Detroit, Mich., 228 Mo.App. 701, 71 S.W.2d 803, 815; Farmers' Bank v. Stamper, Mo.App., 250 S.W. 959, 961; Good v. Kenney, Mo.App., 226 S.W. 596; Hackett v. Dennison, 223 Mo.App. 1213, 19 S.W.2d 541, 544; State v. Green, Mo., 305 S.W.2d 688.

■■ It is the duty of a trial court to examine the verdict when it is returned; and, if such verdict is found to be insufficient as to form, ambiguous, or inconsistent, the court should require the jury to correct it. Thorne v. Thorne, Mo., 350 S.W.2d 754; Blackman v. Botsch, Mo.App., 281 S.W.2d 532; Brown v. Kroger Co., Mo.App., 358 S.W.2d 429. Needless to say, it is counsel's duty to call the attention of the court to any inconsistency or irregularity in such verdict.

■ Defendant complains of plaintiff's Instruction No. 3, because, in referring to the functions to be performed by the mote burner "as it was intended," it refers to other instructions; "whereas there was no other instruction" defining the functions of the mote burner, except as inferentially included in defendant's Instruction No. 5, which treated the incinerator and mote burner as one whole contraption. Whether the giving of an instruction which refers the jury to nonexistent instructions is reversible error depends upon whether jury was likely to have been confused or misled. Chapman v. Missouri Pac. R. Co., 217 Mo. App. 312, 269 S.W. 688(9); Bennett v. Standard Accident Ins. Co., Mo.App., 264 S.W. 27; Shutz v. Wells, Mo.App., 264 S. W. 479; Williams v. Hyman-Michaels Co., Mo.App., 277 S.W. 593. Since the case must be retried, we do not decide whether the reference in this case added to the confusion.

■ We do note, however, another defect in such instruction which we consider to be plain error. The jury was directed to find for plaintiff "in such sums, if any, as you may find are due plaintiff." Plaintiff had testified that no price was agreed upon for the mote burner. "He just ordered it." The submission was necessarily on *quantum meruit*. The measurement of recovery is for the court to declare according to the law. A jury is not permitted to establish its own standards of measurement. Red-E-Gas Co. v. Meadows, Mo.App., 360 S.W.2d 236, 241; Doll v. Purple Shoppe, 230 Mo.App. 256, 90 S.W.2d 181(7); Ingram v. Great Lakes Pipe Line Co., Mo.App., 153 S.W.2d 547, 555. And an instruction on *quantum meruit* should not direct a recovery without requiring that the amount be based upon the reasonable value of the work or articles furnished. Dalton v. Poinsett, Mo.App., 164 S.W.2d 124; Rodgers v. Levy, Mo.App., 199 S.W.2d 79, 82; Kick v. Doerste, 45 Mo. App. 134, 140; Adams v. Smith, Mo.App., 307 S.W.2d 525.

For the foregoing reasons the judgment is reversed and the case is remanded for retrial.

STONE and HOGAN, JJ., concur.