Henry A. JOHNSON, d/b/a Johnson Sheet Metal Works, Respondent,

v.

ESTATE of John L. GIRVIN, Deceased, Appellant.

No. 52417.

Supreme Court of Missouri, En Banc.

April 10, 1967.

Rehearing Denied May 8, 1967.

**246**

J. H. Spears, West Memphis, Ark., Hal E. Hunter, Jr., New Madrid, for plaintiff-respondent.

F. Wm. McCalpin, Samuel H. Liberman, St. Louis, for defendant-appellant, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, of counsel.

SEILER, Judge.

This is an appeal by the executrix from a judgment entered in a second trial of the case, this time before the court, against the Estate of John L. Girvin on three items: (1) $966.40 for piping and duct work on decedent's gin, about which there is no argument, (2) $5867.80 for construction of a hull burner or incinerator and (3) $1922.-80 for construction of a mote burner, and also against the estate on its counterclaim of $1342.21 for labor and fuel oil expended in keeping the incinerator going. The first trial was before a jury on the same items, resulting in a judgment for plaintiff for $8689.20, the full amount sued for, and a judgment for defendant on the counterclaim for $367.80. On appeal, the judgments were reversed and the cause remanded because the verdicts were considered self-destructive, 370 S.W.2d 163 (Mo.App.). The present appeal was first heard by the Springfield Court of Appeals and by us transferred here on defendant's application.

The litigation commenced, in 1961, with the filing on April 6, approximately four months after death of decedent, of a claim in probate court in which plaintiff stated "there is due him from the estate of John L. Girvin, deceased, the sum of $9124.80 on account of labor and materials furnished". The claim was sworn to and contained the proper recitals as to having given credit for all payments and offsets and that the balance claimed was justly due. Defendant did not challenge the sufficiency of the pleading or move for a more definite statement, but joined issue by filing a general denial and then stating as a counterclaim that decedent and plaintiff entered into a verbal contract whereby plaintiff for $5800 was to furnish labor and materials to construct an incinerator, guaranteeing it would automatically burn cotton hulls and refuse from the cotton gin and the soybean elevator as blown into the incinerator and "that if it didn't work it was his 'baby'"; that the incinerator was built, but not well made, not free from defects of workmanship and materials, would not automatically burn cotton hulls and refuse from the cotton gin and bean elevator and as a direct result, deceased spent $1342.21 for labor and fuel oil in order to burn the refuse, praying judgment for such amount.

The present trial was pretty much of a "no holds barred" contest, with the experienced trial judge, however, in firm control throughout. The estate conceded it owed the $966.40 item for piping and duct work on the gin. On the other items, the record shows the parties were in agreement there was an oral agreement plaintiff would build a hull burner or incinerator for decedent's gin for $5867.80. The disagreement was over whether the hull burner worked properly and whether a mote burner added later worked properly and, if so, whether decedent was to pay for it. Plaintiff's case was as follows: plaintiff did sheet metal, welding and gin work and he had done other work at the gin for decedent earlier in 1960. Plaintiff's agent

(his son) and the decedent then entered into an oral agreement that plaintiff would build a hull burner for decedent's gin for $5800 plus sales tax (defendant produced an invoice which showed $2260 material on the burner, $67.80 sales tax, and $3540 labor and repairs, total $5867.80, but the son said he could not tell how much was labor and how much was material, that they wrote it up this way so they wouldn't have to charge decedent sales tax on $5800, that the undertaking was a contract and $5867.80 was the agreed price). The son drew a rough sketch of what he had in mind, based on a shop drawing of an all metal incinerator made by another concern, from which he had built other burners. The decedent told him to build the burner. Plaintiff's son proceeded accordingly, following generally the plans and specifications of the shop drawing, but modifying it to fit the size of the Girvin gin. However, Mr. Girvin said it was not as high as it was supposed to be, so at plaintiff's expense, the burner was extended in height ten feet, making it thirty feet high. Mr. Girvin then said the burner was all right and if plaintiff would stop the motes (there was a good deal of disagreement about just what a mote is, the descriptions ranging from its being a small, immature seed with perhaps a wisp of cotton clinging to it, light enough to float in the air, highly inflammable, to a much heavier conglomeration of cotton refuse, including stick and green leaf and hard to burn) from coming out of the top he would pay plaintiff. Plaintiff's evidence was that after the hull burner was raised to the requested height the further understanding was that anything else that went on it would be paid for by decedent and decedent told the son to stop the motes from coming out.

To do so plaintiff's son built a mote burner to one side of the hull burner. The cost of the material which went into the mote burner, 14-gauge black iron, was $760 and cost of the labor was $1140, both of which plaintiff's son testified were fair and reasonable prices, with sales tax of

$22.80. Plaintiff's evidence was that both the hull burner and the mote burner operated perfectly when properly handled; that after the mote burner was installed decedent complimented plaintiff's son on it.

Defendant's case was that plaintiff's son assured decedent the hull burner would burn all the refuse he had at the gin, that plaintiff would make it work; that the hull burner was defectively designed and would not burn the hulls, that unburned hulls would build up to the point where the burner would choke and the gin had to be shut down until the burner could be unchoked; that the hull burner would ignite the motes, which would float out the top; that plaintiff's son was called back a number of times to make adjustments and finally put on a mote burner, which did not work either, as it would become clogged with unburned mote material after a short time; that pressure and fire would build up to the point it would blow out around the bottom edges; that decedent had no agreement to pay for the mote burner and no one on decedent's side knew of any such charge until the claim was filed in probate court; that decedent had to station a man in the hull burner with a rake and can of fuel oil to keep the hulls free and burning, which cost defendant $1342.21.

■ While plaintiff only had two witnesses that the burners operated properly as against five for the estate that they did not, the trial court was in the best position to resolve these factual disputes and decided them in favor of plaintiff, which is also what the jury apparently did in the first trial. Defendant contends the judgment is contrary to the overwhelming weight of the evidence. While there is ample evidence to support a finding either way at the trial level, we do not find anything in the cold record sufficiently convincing for us to make a factual determination different from the trial court's.

■ Once the factual dispute is resolved, defendant's main contentions are that the claim filed in probate court, with no itemized statement attached, is so defective neither the probate nor circuit court acquired jurisdiction and plaintiff's claim should be dismissed in entirety; that plaintiff cannot recover on the hull burner because no claim founded on contract was filed, nor was there any proof which would sustain recovery in quantum meruit; that plaintiff cannot recover on the mote burner because the claim contained no allegations of quantum meruit in this respect.[1]

None of the above was advanced in the first trial, judging from the opinion in 370 S.W.2d 163. There, as here, the main dispute was whether the hull burner and the mote burner worked properly. Plaintiff submitted his theory of recovery on the hull burner on a contract basis, requiring the jury to find plaintiff had performed and that the incinerator was not defective. His instruction recited it was admitted there was a contract for construction of the hull burner, to which defendant made no objection. Plaintiff submitted his theory of recovery on the mote burner on quantum meruit. Defendant's objection to this apparently was limited to a point that the instruction contained a clause referring the jury to other instructions, when there were no such other instructions.

1. In his findings of fact and conclusions of law the trial court did not undertake to decide whether the claim as filed in probate court was in contract or quantum meruit but allowed $5867.80 with interest as the contract price on the hull burner and $1922.80 with interest as a quantum meruit recovery on the mote burner. The record shows the trial court did not state definitely during the trial whether the court considered the claim to be contract or quantum meruit. It has long been held that "If 'it is impossible to say with definiteness whether the plaintiff is counting upon an express contract or upon quantum meruit, he will be permitted to recover upon whichever of the two theories his evidence may warrant' ", In re Hukreda's Estate (Mo.Sup.) 172 S.W.2d 824, 826.

It appears the first time defendant's present contentions were advanced was at the outset of the present trial, as the basis for an objection to admission of any testimony, which was by the court overruled. We do not believe the trial court committed error under these particular facts. A probate claim is sufficient if it gives reasonable notice to the adverse party of the nature and extent of the claim made and if specific enough so that a ruling thereon will become res judicata of the matters involved, Maus, Probate Law and Practice, Sec. 939, p. 222, citing cases. The parties agree a probate claim is not to be judged by the rules of pleading applied to a circuit court petition and we note Section 472.080(2), V.A.M.S., of the Probate Code dealing with pleadings provides that "No defect of form or substance in any petition * * * invalidates any proceedings after judgment on the application." When the claim was first filed, at a time when all details should have been fresh in the minds of the various witnesses, the estate made no objection to the form of the claim or challenge to the jurisdiction of the court, but instead met the attack head on, with a general denial together with a counterclaim which showed full knowledge of the contract covering the hull burner and the dispute over its operation. The counterclaim, if successful, would have constituted a defense to the claim. The response of the executrix to the claim indicates she received reasonable notice of its nature and extent. She evidently realized the matter involved the work done on the incinerator, which necessarily as both sides knew, involved the additional work done on the mote burner. It is apparent the executrix had sufficient notice to investigate the matter intelligently and defend vigorously.

Despite the above, defendant is asking us to rule the claim is so defective it was a nullity and the court obtained no jurisdiction. If a motion had been made plaintiff should have been required to make the claim more definite and certain, but it was not a nullity, as illustrated by Watkins v. Donnelly, 88 Mo. 322, where the claim read thus: "Estate of Mary A. Troost to J. Q. Watkins, Dr. To services rendered from July, 1869, to February 1872, $2,500".[2] On appeal by the executor from a judgment in favor of claimant, the court held the statement was vague and that the circuit court erred in not granting the motion of the executors for a more definite statement, but refused to reverse outright and instead remanded for a new trial. See, also, Lamb v. Bush, 49 Mo.App. 337, where, in an action before a justice of the peace, the court held the following statement: "J. D. Bush, Dr. to J. F. Lamb. For work and labor . . . $129.23"[3] was not so barren as not to be amendable, saying at 49 Mo.App. l.c. 339:

" * * * The meaning of this is that the plaintiff claims of the defendant the sum of $129.32, for work and labor performed by the plaintiff for the defendant. That is the natural interpretation of it; and, hence, it does state, though meagerly and indefinitely, the cause of action for which the plaintiff sues. * * *"

Also, it has been held the statement of a claim in probate court may be aided by an answer or counterclaim, Hays v. Miller's Estate, 189 Mo.App. 72, 173 S.W. 1096, 1097, and we think that rule is applicable here. When the claim, answer and counterclaim are considered together it is clear the claim involves the construction of the incinerator and related items. Even at common law, where the rules of pleading were rigid, an omission to state a material fact would be obviated if the pleading of the opposite party supplied the

2. The statute then, as now, required the claim be in writing, "stating the amount and nature" thereof, Sec. 188, R.S.Mo. 1879.

3. The applicable statute required the plaintiff to file "a statement of the account, or of the facts constituting the cause of action upon which the suit is founded", Sec. 6138, R.S.Mo.1889.

lack, under the rule known as "express aider", Garth v. Caldwell, 72 Mo. 622, 630. The rule has continued to be used in this state, Butner v. Union Pac. R. Co., 236 Mo. App. 1134, 163 S.W.2d 100, 106. Here the claim stated a definite amount and disclosed it was "on account of labor and materials furnished". Although the claim did not specify when or where the work was done or for what purpose or at whose request, the answer and counterclaim show the executrix was under no misapprehension as to what transactions were involved and under these circumstances we are not willing to hold the statement was so deficient as not to give the court any jurisdiction.

Furthermore, the claim, answer and counterclaim taken together are specific enough so that the ruling in the case will be res judicata of the matters involved. There have been two trials and there will be two appellate decisions in the books. We do not believe there is any practical likelihood the estate is exposed to any danger of having to pay again at some future time for anything awarded herein. The judgment plainly decides the rights and obligations put in issue between the parties.

Judgment affirmed.

STORCKMAN, C. J., and HOLMAN and HENLEY, JJ., concur.

EAGER, J., concurs in result.

DONNELLY, J., dissents in separate dissenting opinion filed.

FINCH, J., dissents and concurs in dissenting opinion of DONNELLY, J.

## DISSENTING OPINION

DONNELLY, Judge.

We are unable to ascertain from the record whether plaintiff's recovery for construction of the *hull burner* was on express contract or in quantum meruit.

I understand the principal opinion to hold that a valid claim was stated on a theory of express contract. I reach this conclusion because the opinion does not answer defendant's contention that "there was no proof which would sustain recovery in quantum meruit." If the case be viewed as one on express contract, the question is whether a valid claim was stated under § 473.380, RSMo 1959, V.A.M.S. I do not believe that a valid claim was stated on a theory of express contract. Bench v. Egan's Estate, Mo.Sup., 363 S.W.2d 547. We must recognize that " * * * if the demand is wholly insufficient, the probate court acquires no jurisdiction to hear and determine the claim and the circuit court will acquire none on appeal." In re Franz' Estate, Mo.Sup., 245 S.W.2d 1, 5. I disagree with the inference raised in the principal opinion to the effect that a want of jurisdiction of the subject matter may be waived by failure to move for a more definite statement, by answer, or by going to trial. 21 C.J.S. Courts § 109.

If the case were considered one in quantum meruit, it is possible that plaintiff's statement of claim is sufficient. This would give the courts jurisdiction over the subject matter of the whole case and would render factitious defendant's assertion that the courts had no jurisdiction over the subject matter. This question of sufficiency is not yet determined. I would remand the case for this purpose, and, if the question is resolved in plaintiff's favor, for trial on a theory of quantum meruit as to the hull burner.

I respectfully dissent.

On Motion for Rehearing

PER CURIAM:

In the motion for rehearing appellant says we ignored the case upon which appellant placed major reliance, Bench v.

Egan's Estate (Mo.Sup.) 363 S.W.2d 547. The case is distinguishable. What it held was that the probate claims there filed on account of breach of contract, containing no allegation or statement of facts as to the manner in which the contract was breached, were wholly insufficient. In the Bench case the defendant legal representatives stood on their motion to dismiss on the ground that the claim failed to state a claim upon which relief could be granted. That was not the case here. Here plaintiff started out with a statement which alleged, with a minimum of words, that there was due him from the estate a definite sum on account of labor and materials furnished. This we have held, although subject to a motion to make more definite and certain, was not a nullity. Ten days after the claim was filed defendant aided the claim by filing a counterclaim which furnished sufficient details so far as the contract aspect of the matter was concerned and which made it plain that so far as the hull burner was concerned the executrix knew the breach of which plaintiff was complaining was failure to make payment of the contract price. The court was not presented with any such situation in the Bench case.

Although appellant says in her motion for rehearing the contract on the hull burner was pleaded in her counterclaim on the assumption that plaintiff's claim was in quantum meruit and for the purpose of limiting the claim to $5800.00, the contract price, this would not lessen the aider aspect of appellant's pleading, referred to above. We note, too, that no such limited purpose in pleading the contract was mentioned at the trial or in appellant's brief. The proof at the trial was that both sides were in agreement there was an oral contract to construct the hull burner for $5800.00. The defense was that whether the claim for construction of the hull burner was in contract or quantum meruit, the hull burner did not perform as warranted and had no value to defendant's decedent, and for that reason the estate owed plaintiff nothing on it.

The counterclaim also cleared the air in some other respects. Plaintiff's claim was for $9124.80. According to the counterclaim, $5800.00 of this was the contract price on the allegedly defective hull burner (the trial court added $67.80 for sales tax, thus arriving at the amount awarded, $5867.80). The counterclaim disposed of an additional $1334.20 of plaintiff's claim, by referring to a payment of $367.80, with a balance owed of $966.40 for piping and duct work, as to which there was no dispute. This left $1922.80 and defendant knew from the claim this was for work and labor. In the absence of attack by defendant as to lack of definiteness this was enough to permit evidence (of which there was sufficient) to support a quantum meruit recovery on the mote burner.

The motion for rehearing is overruled.